E. Leo Milonas, J.
The defendant herein, Angie Diaz, and her codefendant Patricia Humphrey were arrested on June 2, 1975 and accused of the crimes of assault in the third degree and petit larceny, in violation of sections 120.00 and 155.25 of the Penal Law. After a preliminary hearing, the court dismissed the first of these charges, holding over the second one for trial.
The District Attorney and defense counsel have stipulated to the following facts:
Carol Mundy, an employee of Gimbel’s Department Store, is a "special patrolman” whose responsibility is to prevent the theft of merchandise from the store and to apprehend persons who commit, or attempt to commit, larcenous conduct. Her duties, which are substantially the same as that of any other security officer who is not a "special patrolman,” are performed in an undercover capacity. On June 2, 1975, at approximately 4:00 p.m., she observed the defendants shopping and talking together. She saw defendant Humphrey take a scarf, *43 fold it and put it into her knapsack, which she then removed when a sales clerk spoke to her. Ms. Mundy interpreted defendant Humphrey’s actions as suspicious; however, barring subsequent events, she would not have arrested the defendants. Noticing that the "checker,” whose job is to account for the number of items carried in and out of fitting rooms, was off duty, Ms. Mundy relieved her by taking up a post near the fitting rooms from where she observed defendant Humphrey take a scarf into one of the fitting rooms, along with defendant Diaz who brought in several ladies’ garments and a knapsack. The fitting room, being open at the top, is not entirely enclosed. Ms. Mundy then ascended a concealed, narrow stairway to a scaffold above the fitting room from which she was able to look down into the room below by means of a grated air vent. From this vantage point and without the use of any apparatus, she watched the defendants remove tags from the clothing and place the garments in the knapsack. Approximately twelve feet from the fitting room floor, there is an opening extending the length of the room on one of the side walls. From a proper position, the defendants could have noticed the top portion of Ms. Mundy’s head. Ms. Mundy subsequently followed the defendants, detained them on the escalator leaving the department, and took them to the security floor where their bag was searched. Two women’s tops and a scarf were seized.
The defendant now moves to suppress the visual observations of Ms. Mundy, as well as all testimony and physical evidence derived therefrom, on the grounds that they constitute an unlawful search and seizure prohibited by the Fourth Amendment of the United States Constitution.
The Fourth Amendment, it must be noted, applies only to acts committed by officials or agents of the government and not to those undertaken by private persons (Burdeau v McDowell, 256 US 465; People v Horman, 22 NY2d 378, cert den 393 US 1057). In the instant situation, Ms. Mundy is a "special patrolman” for Gimbel’s Department Store. The People contend that she should not be deemed a public official for Fourth Amendment purposes because she was engaged in a private duty. In support of this argument, the District Attorney cites a number of cases, among them People v Horman (supra), wherein the Court of Appeals held that evidence seized illegally by detectives of the S. Klein Department Store in Hempstead, New York, was admissible in a criminal prose *44 cution. As this court has previously held in People v Smith, 82 Misc 2d 204, Horman is distinguishable in that special patrolmen in New York City are licensed by the city, appointed by the police commissioner, and possess powers beyond those of an ordinary citizen (see Administrative Code of City of New York, § 434a-7.0). For the reasons enunciated in People v Smith (supra), this court is of the opinion that Ms. Mundy must, in fact, be considered an agent of the government.
Therefore, it is necessary to examine the question of whether the visual surveillance of customers who are in a closed fitting room of a retail establishment involves a search within the meaning of the Fourth Amendment. The United States Supreme Court has, on numerous occasions, declared that the intention of the Fourth Amendment is to shield people from unwanted intrusions into their privacy (Jones v United States, 357 US 493; Katz v United States, 389 US 347; United States v Dionisio, 410 US 1; Cardwell v Lewis, 417 US 583).
The leading authority on the subject of search and seizure and the right of individual privacy is Katz v United States (supra). In that case, the government, at trial, was permitted to introduce evidence of telephone conversations at the defendant’s end of the linei, which were overheard by F.B.I. agents who had attached an electronic device to the outside of the telephone booth from which the defendant placed his calls. The Supreme Court reversed the conviction, asserting that the Fourth Amendment protects people, not places. According to the court, what a person knowingly exposes to the public, even in his home or office, is not subject to constitutional safeguard, but that which he seeks to preserve as private, even in an area accessible to the public, may be so protected. Thus wherever "a man may be, he is entitled to know that he will remain free from unreasonable searches and seizures” (p 359). This is no less true in a telephone booth than in a business office, a friend’s apartment, or in a taxicab. Further, the Fourth Amendment extends not only to the seizure of tangible items, but also to the recording of oral statements that are overheard without any technical trespass, since the reach of this amendment does not turn on the presence or absence of actual physical intrusion into any given enclosure. In short, the Supreme Court announced the principle that the protection afforded by the Fourth Amendment depends on an *45 individual’s reasonable expectation of privacy. (See, also, Mancusi v DeForte, 392 US 364.)
Courts have uniformly interpreted Katz v United States (supra), to apply to visual observations, as well as conversations which are overheard by means of electronic eavesdropping devices. The legality of a particular search is determined by whether the person involved possesses a reasonable expectation of privacy under the circumstances of that case. For instance, where the defendants’ second floor apartment window was not curtained and plants resembling marijuana could be seen in the window, the defendants did not have a reasonable expectation of privacy, so that the detective’s use of binoculars from his automobile in a parking lot across the street did not amount to an illegal search of the apartment (State v Manly, 85 Wn2d 120; see, also, Commonwealth v Hernley, 216 Pa Super Ct 177; Turner v State, 499 SW2d 182 [Tex]). In effect, courts which employ this rationale are relying on the "plain view” doctrine, in that there can be no reasonable expectation of privacy as to those things which are fully disclosed and generally noticeable by the public at large (see Harris v United States, 390 US 234).
Therefore, the defendant did not have a reasonable expectation of privacy where items were observed through the uncurtained part of a large picture window adjacent to the front door of her apartment (People v Becker, — Col —; 533 P2d 494). On the other hand, where the Venetian blinds were drawn completely closed on the window of a room in which the defendant was allegedly observed smoking marijuana, the defendant exhibited a subjective expectation of privacy which was objectively reasonable despite the fact that there was a defect in the blind through which the officer was able to look into the room (Jacobs v Superior Ct. of Stanislaus County, 36 Cal App 3d 489). See also State v Person (34 Ohio Misc 97; 63 Ohio Op 2d 406), where peeping through the keyhole of a private room from a common passageway was deemed an unauthorized search within the Fourth Amendment.
In People v Farenga (81 Misc 2d 287), the court held that the movement of agents of the State Department of Taxation and Finance across an open driveway leading to the door of a garage did not unreasonably encroach upon the defendants’ area of expected privacy, since, even had the agents’ suspicion not been so flagrantly aroused, it would have been appropriate for them to look inside the garage, through an open door, *46 without violating any constitutional rights. (See, also, Hart v Superior Ct of County of San Mateo, 21 Cal App 3d 496. [No expectation of privacy where marijuana plants in the defendant’s backyard were plainly visible to a neighbor and a police officer whom the neighbor invited to his premises to make observation through a fence.])
There also exists an "open-fields” doctrine based upon Hester v United States (265 US 57) and its progeny, which holds that an individual’s property lying beyond the dwelling house and the area immediately adjacent to it may be properly subjected to a warrantless search. See Fullbright v United States (392 F2d 432, cert den 393 US 830), in which the court decided that the binocular observation, some 75 to 100 yards away, of the operation of a still within a shed and the loading of liquor into an automobile was not an illegal search under the theory of "open fields.”
Where law enforcement officers have gained entry to a building by means of a trespass, surveillances made in the course of that trespass constitute an illegal search. In People v Terrell (53 Misc 2d 32, affd 30 AD2d 644), the officers, without any probable cause, surreptitiously unlatched the roof door of a multiple dwelling and entered upon the roof, went down the fire escape and, from there, peered through the window of two of the apartments of two of the 15 defendants. This, in the view of the court, was a violation of the defendants’ Fourth Amendment rights. The officers’ observation of several women apparently putting heroin into bags was an unlawful search and could not supply reasonable cause for their subsequent searches and seizures and arrest of the defendants. (See, also, State v DiBartolo, 276 So2d 291 [La].)
While there do not appear to be any cases specifically relating to the right to privacy in fitting rooms, the nearest authority is a series of cases which deal with the legality of observations of public restrooms. In People v Metcalf (22 Cal App 3d 20) the court, in declaring that a police officer’s testimony as to matters seen from behind a louvered door in a service closet adjacent to a department store should have been suppressed, cited a California statute proscribing the installation or maintenance of two-way mirrors in any restroom, toilet, bathroom, washroom, shower, locker room, fitting room, motel room or hotel room as indicating a public policy against such clandestine surveillance. In People v Triggs (8 Cal 3d 884), the court held that the expectation of privacy possessed *47 by an individual is not diminished or destroyed because the toilet stall being used lacks a door. (See, also, Brown v State, 3 Md App 90; Kroehler v Scott, 391 F Supp 1114. [Since the expectation of privacy in public restrooms is generated by the nature of the activity involved, rather than by the precise physical characteristics of the stall, whether or not the stalls have doors is not crucial in determining if observation of the restrooms violates the Fourth Amendment.])
This court does not discern much distinction between the privacy which people have a right to expect in public restrooms from that which they hope to find in fitting rooms. As in the case of restrooms, the fact that the fitting rooms in Gimbel’s Department Store were not totally enclosed does not render the surveillance by Ms. Mundy as one made in plain view, since the expectation of privacy is not determined by whether or not the rooms happen to be totally enclosed. What is crucial here is the nature of the activity involved and whether an individual engaged in that activity may reasonably believe that he may perform it in private. The People argue that the crime of shoplifting has been frequently discussed both in print and on television, and that, therefore, it is inconceivable that a person who shops at Gimbels is unaware of the possibility that his or her every move is being scrutinized, particularly in view of the numerous indications there are of customer surveillance. Uniformed guards are posted at entrances and exits; mirrors and sometimes even cameras are in plain view on the store floors; and checkers count the number of articles being brought into the fitting rooms. Thus, for the defendants to have believed that Gimbels would secure every inch of its property through use of sophisticated devices and personnel, but leave one area completely unguarded is ridiculous, the People contend.
The court does not agree. While it is true that there has been a great deal of publicity about the difficulties encountered by Gimbels and other stores in dealing with the problem of theft, this does not mean that people using fitting rooms do not have an expectation of privacy. The function of a fitting room is, after all, to provide a place where a customer can try on items of clothing in private, undisturbed from the observation of others. Simply because a person suspects that there is a possibility that someone may be looking in does not negate the expectation of privacy. Certainly Gimbels, or any other business, has a real interest in protecting itself against theft. *48 However, there are far less intrusive security measures which it can utilize than resorting to surreptitious spying on shoppers as they undress and try on various garments. Such action infringes on people’s reasonable expectation of privacy and, therefore, involves a violation of the Fourth Amendment.
The People also contend that, regardless of the issue of defendant’s reasonable expectation of privacy, Ms. Mundy had probable cause to search in the instant situation in that she saw defendant Humphrey place a scarf in her knapsackj which she removed when approached by a sales clerk. At most, the defendants’ conduct is suspicious and equivocal, which, without more, does not justify a search. (People v Brown, 24 NY2d 421; People v Corrado, 22 NY2d 308; Agnello v United States, 269 US 20; Jones v United States, 357 US 493; see, also, People v Oden, 36 NY2d 382; People v Brown, 32 NY2d 172.) ,
Consequently, the defendant’s motion to suppress the visual observations of Ms. Mundy, as well as all testimony and physical evidence derived therefrom, is granted.