## COMMONWEALTH vs. EDWARD J. LEONE.

Essex. February 1, 1982. — May 26, 1982.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Constitutional Law,* Search and seizure. *Search and Seizure,* State action, Private security guard, Special police officer.

Discussion of the applicability of the constitutional prohibition against unreasonable searches to privately employed security guards. [334]

Statement of standards to be applied in assessing the legality of a search conducted by a police officer privately employed as a security guard and acting on behalf of his employer. [334-338]

COMPLAINTS received and sworn to in the Southern Essex Division of the District Court Department on January 29, 1981.

Motions to suppress evidence were heard by *Camuso, J.*

The Supreme Judicial Court granted a request for direct appellate review.

*Dyanne Klein Polatin,* Assistant District Attorney, for the Commonwealth.

*Richard Berman* for the defendant.

HENNESSEY, C.J. This is an interlocutory appeal by the Commonwealth, which objects to the suppression of certain evidence in a criminal proceeding in a District Court. The issues posed are whether the Fourth Amendment to the United States Constitution affects the admissibility of evidence discovered by a special police officer privately employed as a plant security guard, and if so, whether the officer's conduct constituted an unreasonable search and seizure. We conclude that the Fourth Amendment does apply, but that the officer's private function may affect the constitutionality of his conduct. Further, because of the incomplete record before us, we vacate the judge's ruling suppressing the evidence, and we direct that further proceedings be held.

The defendant is charged with possession of a firearm and receipt of stolen goods (the firearm). At the time of his arrest, he was employed as a truck driver by an independent contractor which leased his services to General Electric Company. He drove exclusively for General Electric, and regularly traveled between General Electric plants in Lynn, Massachusetts, and Durham, North Carolina. On these trips the defendant used a truck bearing General Electric insignia and leased by General Electric from a truck rental company. Inside the cab of the truck was a sleeping compartment, which the defendant used as his personal living quarters while driving between Lynn and Durham.

On January 29, 1981, John Vousboukis, a General Electric security guard, stopped the defendant at the gate of General Electric's Lynn plant to determine whether the defendant's cargo was properly authorized to leave the plant. Vousboukis first inspected the cargo section of the truck, checking the cargo against a description on the defendant's gate pass. Then, over the defendant's objection, he entered the cab of the truck.[1] On the bed in the defendant's sleeping quarters was a travel bag. It appears that the bag was closed, but not secured.[2] Vousboukis picked up the bag, and discovered a gun within.

---

[1] Vousboukis testified that the defendant had told him angrily that he "did not want [him] in [the] cab." Vousboukis also stated that he had noticed the defendant holding first a wooden club and later a tire iron, and had feared that the defendant would hit him. He added, however, that the defendant had explained that he wished to check the tires, and had relinquished both items upon request.

[2] Both Vousboukis' testimony at the hearing to suppress and the judge's findings leave unclear the precise condition of the bag when Vousboukis came upon it. Vousboukis stated that the bag was not zippered shut. He also asserted at one point that it was "open," but later contradicted this by stating that he "was going to pull the bag over so [the defendant] could open it." The judge found that Vousboukis "opened" the bag, but added that "in picking up this bag, [he] noticed what he testified to was a butt of a handgun." The defendant testified at the suppression hearing, but was not asked whether the bag was open, closed, or fastened in any way. The best inference from the record is that the bag was closed, but not fastened shut, and that Vousboukis caused it to open as he picked it up.

After questioning the defendant concerning firearm identification (the defendant stated that he had no Massachusetts identification card but had a North Carolina card at his home), Vousboukis took custody of the gun. He then contacted another security officer, who came to the gate and questioned the defendant further. The second officer contacted the Lynn police, and learned that the gun had been stolen from a Lynn police officer. Vousboukis turned over the gun to the police when they arrived.

The defendant moved to suppress the gun on the ground that Vousboukis had conducted an unreasonable search and seizure in violation of the United States and Massachusetts Constitutions.[3] At a hearing on the defendant's motion, Vousboukis testified that he was a "special police officer" for the city of Lynn, employed by General Electric to patrol its Lynn plant. His duties at General Electric included checking persons entering or leaving the plant to determine whether they were company personnel, and inspecting vehicles, to ensure that any "company materials" leaving the property were authorized to leave. There was no evidence explaining his status and duties as a special police officer.

Vousboukis stated that gate inspections of vehicles and their contents, including the drivers' personal bags, were routine practice. He also mentioned a company regulation providing that security plant guards could inspect any items brought onto or taken away from company property. According to Vousboukis, all employees and contractors were provided with a copy of the company regulations.[4] The defendant testified that security guards had never inspected his truck or belongings during the eight years in which he

---

[3] The motion referred only to the gun, and not to the statements made by the defendant at the time of the search.

[4] The Commonwealth offered as evidence a booklet entitled "Code of Plant Conduct," addressed to plant employees. Appearing on the third page of the booklet was the statement: "We recognize that plant guards have authority to examine all company property and to inspect all items or vehicles being taken into, on, or . . . from the premises." The judge marked the booklet for identification, but refused to allow it as an exhibit in the absence of any evidence that the defendant had knowledge of it.

had driven to and from the Lynn plant. He also stated that he had not received a copy of the company regulations, and had no knowledge of the provision for inspections.

The judge assumed that the Fourth Amendment governed the admissibility of the gun. He found that Vousboukis had acted in accordance with plant custom in stopping the defendant at the gate, but did not state whether he believed that further inspection was customary. He ruled that Vousboukis "had the right and duty to inspect the cargo, and the inside of the cab, but had no right to handle the travel bag," and that Vousboukis' conduct had "violated the reasonable expectation of privacy held by the defendant." On this ground, he suppressed the evidence.

There is no suggestion that, before stopping the defendant's truck, Vousboukis had probable cause to search the truck, or even reason to suspect that the defendant was involved in crime. Under the standards applied to ordinary police officers, he was not entitled to conduct even a cursory search.[5] See, e.g., *Commonwealth* v. *Loughlin*, 385 Mass.

---

[5] The Commonwealth offers two arguments in an effort to justify Vousboukis' actions under traditional Fourth Amendment standards applicable to police. First, it contends that the gun was "in plain view" in the cab of the truck. See *Commonwealth* v. *Cefalo*, 381 Mass. 319, 330-331 (1980); *Robbins* v. *California*, 453 U.S. 420, 428-429 (1981); *Coolidge* v. *New Hampshire*, 403 U.S. 443, 464-471 (1971). The judge found, however, that Vousboukis could not have seen the gun until he had handled and examined the travel bag. Further, the rule permitting warrantless seizure of certain readily visible evidence applies only when the police have come by lawful means to the place from which they view the evidence. *Commonwealth* v. *Cefalo, supra* at 330. *Coolidge* v. *New Hampshire, supra* at 466. Unless Vousboukis' presence in the cab could be justified, the "plain view" doctrine could not operate.

Second, the Commonwealth argues that "probable cause and exigent circumstances" arose when the defendant picked up a wooden club and a tire iron. See note 1, *supra*. The judge excluded Vousboukis' references to the club and tire iron, presumably on grounds of irrelevancy. The Commonwealth argues that the judge's ruling was erroneous, and that the defendant's handling of the club and tire iron justified Vousboukis' search of the cab and travel bag. Assuming, for purposes of argument, that Vousboukis' testimony concerning the club and tire iron tended to show exigency, nevertheless its admission would not have justified the search. Vousboukis stated that he had already climbed into the cab, and looked

60, 62 (1982); *Commonwealth* v. *Silva,* 366 Mass. 402, 404-407 (1974); *Robbins* v. *California,* 453 U.S. 420, 423-429 (1981); *Carroll* v. *United States,* 267 U.S. 132, 155-156 (1925). Therefore, the admissibility of the evidence he discovered depends on whether and in what manner the Fourth Amendment applies to privately employed special police officers such as Officer Vousboukis.

The Fourth Amendment, and the accompanying rule of exclusion, apply only to government action. Evidence discovered and seized by private parties is admissible without regard to the methods used, unless State officials have instigated or participated in the search. *Commonwealth* v. *Richmond,* 379 Mass. 557, 561-562 (1980). *Commonwealth* v. *Weiss,* 370 Mass. 416, 419-420 (1976). *Walter* v. *United States,* 447 U.S. 649, 656 (1980). *Burdeau* v. *McDowell,* 256 U.S. 465, 475 (1921). See generally 1 W. LaFave, Search and Seizure § 1.6 (1978); Annot., 36 A.L.R.3d 553 (1971). This rule follows from the origins and design of the Fourth Amendment as a restraint against arbitrary or lawless use of sovereign power, with its great potential for intrusion upon the privacy of individuals. See *Burdeau* v. *McDowell, supra* at 475; 1 W. LaFave, *supra* § 1.1 (a). Limitation of Fourth Amendment sanctions to government action is also consistent with a major objective of the rule of exclusion — deterrence of unreasonable searches and seizures. Private persons are not regularly involved in law enforcement, and those who undertake searches generally do so for reasons other than to secure criminal conviction. Therefore, exclusion of the fruits of their activities will not have a significant deterrent effect. See 1 W. LaFave, *supra* § 1.6, at 112-113; Annot., 36 A.L.R.3d 553, 558 (1971).

---

into the sleeping area when he first saw the defendant with a club. Thus the "probable cause and exigent circumstances" of which the Commonwealth speaks could not have supported the first stages of the search. Further, Vousboukis' examination of the sleeping area and travel bag occurred after the defendant had relinquished the club and tire iron, and in any event bore little relation to the "exigency" at hand. Cf. *Mincey* v. *Arizona,* 437 U.S. 385, 393 (1978); *Michigan* v. *Tyler,* 436 U.S. 499, 511 (1978).

Privately employed security forces pose a difficult problem of distinction between State and private action. Most courts have held that the Fourth Amendment does not apply to private security personnel who hold no special authority under State law. In reaching this conclusion, they have reasoned that the primary function and concern of privately employed security officers is protection of their employers' property, rather than conviction of wrongdoers. E.g., *United States* v. *Francoeur,* 547 F.2d 891, 893-894 (5th Cir.), cert. denied, 431 U.S. 918, 923 (1977); *United States* v. *Lima,* 424 A.2d 113, 118, 121 (D.C. 1980); *State* v. *Mc-Daniel,* 44 Ohio App. 2d 163, 170-174 (1975); *State* v. *Robinson,* 86 N.J. Super. 308, 318 (1965). Several courts and commentators have taken a different view, pointing out that private security forces have come into increasing use as supplements to police protection, and perform functions much like those of ordinary police. Private security personnel investigate criminal activity on a regular basis, and may well have an interest in the outcome of criminal actions against persons who pose a threat to the employer's property. See *People* v. *Zelinski,* 24 Cal. 3d 357, 365-368 (1979); *People* v. *Holloway,* 82 Mich. App. 629, 639-641 (1978) (Kaufman, J., concurring); *People* v. *Eastway,* 67 Mich. App. 464, 467-468 (1976); 1 W. LaFave, *supra* § 1.6 (d), at 128-129; Note, Seizures by Private Parties: Exclusion in Criminal Cases, 19 Stan. L. Rev. 608, 614-617 (1967). See also *District Attorney for the Plymouth Dist.* v. *Coffey, ante* 218, 226 (1982) (Liacos, J., concurring). Cf. *Marsh* v. *Alabama,* 326 U.S. 501, 505-510 (1946) (conduct of private entity exercising "public function" may be treated as State action). Nevertheless, the majority continue to view purely private security officers as private actors. See 1 W. LaFave, *supra* § 1.6 (d), at 126-127.

A different rule prevails when an officer possesses additional status as a special or deputy police officer. Specially commissioned officers are formally affiliated with the sovereign and generally possess authority beyond that of an ordinary citizen in matters such as arrest and the use of weapons.

Therefore, they are treated as agents of the State, subject to the constraints of the Fourth Amendment. See, e.g., *United States* v. *Lima, supra* at 118-119; *People* v. *Smith,* 82 Misc. 2d 204, 206-208 (N.Y. Crim. Ct. N.Y. 1975). See *State* v. *Wilkerson,* 367 So. 2d 319, 321 (La. 1979) (off-duty police officer); *Pratt* v. *State,* 9 Md. App. 220, 224-225 (1970) (Miranda warnings).[6] Cf. *Griffin* v. *Maryland,* 378 U.S. 130, 135-137 (1964) (action of amusement park guard who asserted his authority as deputy sheriff in excluding and arresting black patrons was State action); *Williams* v. *United States,* 341 U.S. 97, 99-100 (1951) (beating of suspects by private detective commissioned as special policeman and acting in company of regular policeman, was action "under color of state law," for purpose of criminal action against him). But see *State* v. *McDaniel, supra* at 174-175.

We agree that a State officer privately employed as a security guard is bound to comply with the Fourth Amendment when performing investigatory duties, and that evidence he discovers through methods in violation of the Fourth Amendment is subject to the rule of exclusion.[7] But this does not mean that the bounds of permissible conduct are the same for the privately employed special officer as they would be for an ordinary police officer. The guard's private function adds a new aspect to his activities, which we believe is relevant to the proper application of the Fourth Amendment. The action he takes on behalf of his employer may be a lawful and necessary means of protecting the employer's

[6] The defendant in the present case has raised no claims based on the Fifth Amendment or the rules established in *Miranda* v. *Arizona,* 384 U.S. 436, 467-479 (1966), and our discussion throughout this opinion is limited to the problem of unreasonable search and seizure.

[7] We express no opinion on the bearing of the Fourth Amendment on the conduct of an individual who does not possess official status, but functions in much the same manner as a police officer. See *District Attorney for the Plymouth Dist.* v. *Coffey, ante* 218, 226-229 (1982) (Liacos, J., concurring); *People* v. *Zelinski,* 24 Cal. 3d 357, 365-368 (1979); L. Tribe, American Constitutional Law § 18.3, at 1158 (1978). Whether or not the added status is sufficient to distinguish the two cases, we believe that the combination of official status and investigatory function brings the guard in this case within the scope of the Fourth Amendment.

property, although it would be impermissible if taken on behalf of the State in pursuit of evidence. Cf. Restatement (Second) of Torts § 260 (1965) (privilege to interfere with another's property in defense of actor's property). When the guard's conduct is justified by his legitimate private duties, it should not be treated as lawless, or "unreasonable," search and seizure.

Established principles support the conclusion that the existence of a lawful private purpose should be taken into account in applying the Fourth Amendment. The guard's position is similar to that of a police officer who intrudes by lawful means upon an individual's privacy, and then discovers unanticipated evidence. See, e.g., *Commonwealth* v. *Cefalo*, 381 Mass. 319, 330-331 (1980); *Coolidge* v. *New Hampshire*, 403 U.S. 443, 464-471 (1971). The subject of the search, for his part, has reason to expect some scrutiny or interference by the agents of the private party whose property he uses or handles. Cf. *Katz* v. *United States*, 389 U.S. 347, 351-353 (1967). Moreover, when the guard takes legitimate steps for the protection of his employer's property, there is no cause for the deterrent sanction of the exclusionary rule. Cf. *Terry* v. *Ohio*, 392 U.S. 1, 12-15 (1968). Exclusion would serve only to frustrate prosecution of those whose crimes happen to come to light in the course of a routine inspection by a security guard.

For these reasons, we conclude that an investigation by a special police officer privately employed as a security guard does not violate the Fourth Amendment when it is conducted on behalf of the private employer, in a manner that is reasonable and necessary for protection of the employer's property. If, on the other hand, the officer steps outside this sphere of legitimate private action, the exclusionary rule applies as it would to any State officer. The burden of establishing the constitutionality of the officer's conduct rests with the Commonwealth. See *Commonwealth* v. *Antobenedetto*, 366 Mass. 51, 56-58 (1974).

The present record does not afford sufficient basis for applying the principle we have outlined. We have no infor-

mation concerning Vousboukis' duties as a special police officer in the city of Lynn. Nor does the record reveal the nature of the private property he purported to protect. Neither the judge nor the parties could have anticipated the requirements of our decision, and a new hearing is necessary.

At the new hearing, the propriety of the guard's action should be determined in light of the reasons for special treatment of a privately employed special police officer acting on his employer's behalf. These reasons are the private nature and purpose of his conduct, the legitimacy of the specific action he takes as a means of protecting private property, and the diminished expectations of privacy of the subject of the investigation. Several definite requirements follow from these foundations.

First, the guard must have acted under the control of his private employer. See *State* v. *McDaniel*, 44 Ohio App. 2d 163, 174-175 (1975). If the investigation exceeded his private duties or authorization, he must be considered to have acted in his official capacity. Similarly, if the guard has received instructions from State authorities, on a regular basis or in regard to the particular investigation at issue, his conduct is not protected by his private role.

Second, the guard's actions must be clearly related to his employer's private purposes. An investigation that goes beyond the employer's needs cannot be justified as an incident of the guard's private function. If, for example, none of the General Electric property to which the defendant had access could have been concealed in a travel bag or sleeping compartment, Vousboukis was not entitled to search these areas.

Third, the investigation must be a legitimate means of protecting the employer's property, and so must be reasonable in light of the circumstances surrounding it. Cf. Restatement (Second) of Torts § 278 (1965). Reasonableness depends in part on the expectations engendered by the particular setting. If the employer has maintained the private character of his property, those who use it must anticipate

and accept supervision. But if the employer has exposed his premises and chattels to semi-public use, the sense of private prerogative to control its users is much diminished. Custom or advance warning may bear upon the propriety of an investigation, but should not be determinative. See *Commonwealth* v. *Storella,* 6 Mass. App. Ct. 310, 315-316 (1978); *Gillett* v. *State,* 588 S.W.2d 361, 366 (Tex. Crim. App. 1979) (Roberts, J., dissenting); 2 W. LaFave, *supra* § 8.2 (I) (1978). Finally, the judge should consider the methods chosen and the manner in which they are carried out. Failure to employ available, less intrusive alternatives may suggest that the methods employed were unwarranted, and an offense to individual dignity is impermissible in almost any circumstances. See *Gillett* v. *State, supra.*

Accordingly, we vacate the judge's decision. Further evidence on the motion to suppress the gun from evidence is to be received in the judge's discretion, and further proceedings shall be in accord with this opinion.

*So ordered.*