STATE of Tennessee, Appellant,

v.

Gregory D. HUTSON, Appellee.

Court of Criminal Appeals of Tennessee, at Knoxville.

Nov. 29, 1982.

Permission to Appeal Denied by Supreme Court Feb. 28, 1983.

William M. Leech, Jr., Atty. Gen., David M. Himmelreich, Asst. Atty. Gen., Nashville, Ronald A. Webster, Dist. Atty. Gen., William J. Brown, Asst. Dist. Atty. Gen., Knoxville, for appellant.

Martha L. Cochran, Knoxville, for appellee.

## OPINION

O'BRIEN, Judge.

This is a State appeal from the Criminal Court for Knox County, Tennessee. After a hearing on a motion for that purpose the trial court suppressed evidence, effectively terminating the State's prosecution of defendant on an indictment charging him with burglary and larceny. The defendant is presently on pre-trial release.

In summary the evidence shows that Minact, Inc., a private corporation administers the Knoxville Job Corps under government contract through the Manpower Act, under the Department of Labor. It is structured as a private industry which operates under government policies and regulations. Its apparent purpose is to teach job skills to adult students from the surrounding area. The Job Corps Building in Knoxville, Tennessee contained nine floors. The upper five floors were utilized as residential dormitories for the students. The first four floors were occupied by administrative offices, classrooms, and their accouterments. On April 16, 1981, Mr. L.D. Bell was employed by the Knoxville Job Corps as a security guard. He regarded himself as a civilian employee of that organization. He was not a bonded deputy nor did he have any relationship with any law enforcement agency. After the classroom floors of the building were vacated at five o'clock in the evening an alarm system was actuated which alerted the security personnel whenever anyone entered those floors during the nighttime hours. On the evening of April 16th Mr. Bell responded to an alarm indicating that someone was on the third floor of the building. He pushed the elevator button to go to that floor and found it to be already stopped there. Proceeding up the stairwell, he observed a person entering the elevator, and he watched as it descended to the first floor. When the elevator returned to the third level it was necessary for him to open the door with a key. Accomplishing this he found the defendant, Mr. Hutson, inside the elevator. Hutson was taken to the security office where he was detained by other personnel while Mr. Bell returned to the third floor. He discovered there that forcible entry had been made into two of the rooms. After talking further with Hutson Mr. Bell allowed him to return to his quarters while he went on with his investigation. He found various articles missing and went to Hutson's room to inquire from him about them. Defendant denied having any of the articles in his possession. After some interrogation there he was taken again to the security room where he was examined further without result. Bell and he returned to the dormitory room where Bell asked for his locker key. Hutson informed him he had lost it. Apparently he had been drinking and was sick to his stomach. In the meantime, a Mr. Pearson, who was in charge of the residential quarters, came to the room to inquire about the matter. Informed of what had happened, and that Hutson said he had lost his key to the locker, Pearson instructed Bell to break the lock. When Bell complied they found the missing articles in the locker. Subsequently Hutson admitted their theft.

The motion to suppress was premised on the fact that the search was made without a warrant, and without the consent of the defendant. Suppression of his oral admission was requested on the basis that he was under the influence of an intoxicant to such an extent that he could not knowingly and intelligently waive his rights.

It was the State's position that this was a private search and that no official of the federal government was involved.

Defense counsel insisted, on the other hand, that because Mr. Bell wore a uniform, and interrogated defendant after advising him of his rights, he was acting under the color of law as a State law enforcement agent for Fourth Amendment purposes.

The trial court found that Mr. Bell's conduct was not the action of a private person because the .Job Corps was a program set up and funded by the federal government with the money funneled through the Department of Labor. He was of the opinion that because Mr. Bell was in uniform, wore a badge, and was referred to as Officer Bell, that defendant was in custody at the time the search was made. He concluded that Officer Bell was acting under the color of law in concert with the State, and that it was not an unreasonable requirement to obtain a warrant for the search of the foot locker.

We have reviewed the evidence and considered the finding of the trial judge at some length. We have also reviewed the cases upon which he based his findings. Having done so, we do not agree they are applicable to the facts of this case. Each of those cases cited as the bases for his ruling involve actual searches made by police officers under one condition or another. There was no question of their status as police officers. The cases do not apply, either factually, or on a legal basis, to the circumstances of the case before us. This is equally true of the authorities cited to us by counsel for the defendant. Both counsel for the defendant and the State's attorney have provided us with exemplary briefs, but neither have been able to supply a case exactly on point. Nor have we, in our research, found a case in this State, or elsewhere, which exactly answers the question with which we are confronted. In *Burdeau v. McDowell,* 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921), the United States Supreme Court held that the Fourth Amendment is a limitation upon the government only, and consequently evidence secured by private illegal searches need not be excluded from the criminal trial. In LaFave's Treatise on Search and Seizure, Vol. 1, Sec. 1.6, the author, reviewing the current status of the law, engages in an extensive discussion of the cases involving the issue of searches which may, or not, fall within the scope of a Fourth Amendment violation. He refers us to Annot., 36 A.L.R. 3rd 553 (1971) for the conclu-

sion that virtually all courts continue to follow the *Burdeau* rule. Insofar as we are able to ascertain Tennessee Courts are among those. See *Simmons v. State,* 491 S.W.2d 633, (Tenn.Cr.App.1972). The nearest we have come to a statement which adapts itself to the issue in this case we have found in *United States v. Lima,* 424 A.2d 113 (D.C.App.1980) in which the court held that searches and seizures by private security employees are considered searches by a private citizen and not subject to Fourth Amendment proscriptions unless the security guard has powers akin to that of a regular police officer and is appointed by a governmental official, even though employed by a private company. A State's regulation of security guards through licensing does not convert their every action into that of the State. Evidence seized by a private citizen and freely given to a government agent is competent and admissible evidence.

In this case the Minact Corporation was no more a government agency than any other company or individual with whom the government contracts to supply a product or a service, of whatever nature. It is common knowledge that both federal and state governments engage in thousands of contracts daily with many organizations of many types whose employees have absolutely no connection with the government whatsoever other than being an employee of a government contractor. We note in this case that part of the reasoning of the trial judge was based on the prospect that defendant's locker could have been impounded until a warrant could be obtained. But under the facts of this case it would have been no more legal for Mr. Bell or Mr. Pearson to impound the locker of defendant than it was for them to break the lock in the first instance. Reduced to its simplest form we think the issue is resolved by answering the question of whether or not Mr. Bell could have obtained a search warrant. Under our statutes (T.C.A. § 40–501, et seq.), a search warrant is an order in writing directed to the sheriff, constable, or any peace officer of the county commanding

him to make a search. We are satisfied that the only way Mr. Bell could obtain a search warrant in this case would have been to go as an informer, or as a private citizen, to some member of the police for that purpose.

■ In reference to defendant's statement, there was little evidence in this record regarding the reasons why it should have been considered involuntary. The trial court did not make any order in reference to its suppression. The evidence shows Mr. Hutson escaped into the elevator in an effort to elude the security personnel. It was only by chance that Mr. Bell was able to apprehend him in the elevator. His state of sobriety was such that Mr. Bell allowed him to go to his room alone from the first floor to the sixth floor of the Job Corps Building. Although there was evidence that he had been drinking and was sick to his stomach he was apparently able to respond to the questions put to him by Mr. Bell. He was able to get to the third floor offices without detection. In some fashion he managed to conceal the stolen items until he arrived on the sixth floor where he secured them in his locker and denied to Mr. Bell that he had the key. We find nothing in the record to require exclusion of his admission to Mr. Bell that he had stolen the articles from the third floor.

The order suppressing the evidence seized from Mr. Hutson's footlocker is set aside and reversed. The case is remanded for further prosecution.

DAUGHTREY and BYERS, JJ., concur.