824 P.2d 326

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Oscar MURILLO, Defendant–Appellant.**

**No. 12757.**

Court of Appeals of New Mexico.

Nov. 20, 1991.

Jacquelyn Robins, Chief Public Defender and Bruce Rogoff, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Tom Udall, Atty. Gen. and Mary Catherine McCulloch, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

BLACK, Judge.

Defendant appeals from his conviction for one count of possession of cocaine. He argues the Fourth Amendment should apply to an off-duty investigator for the district attorney's office acting as a private security officer, and that the trial court therefore erred in denying his motion to suppress the cocaine. For the reasons discussed below, we reverse and remand.

FACTS

Mike Gonzales is an investigator for the Third Judicial District Attorney's Office and the owner of a private security company. Shortly after midnight on February 20, 1990, he received a telephone call at his

security firm. The unidentified caller informed Gonzales that defendant, Oscar Murillo, was at the Welcome Inn and was carrying a gun. Because his private security firm provided service to the Welcome Inn, Gonzales attempted to contact his other security unit to respond to the call. When he determined the other unit was unavailable, Gonzales went to the Welcome Inn himself. In case defendant actually was carrying a weapon, Gonzales called for the assistance of the local police at some point prior to his initial contact with defendant.

Gonzales testified that he was acquainted with defendant and recognized him upon entering the Welcome Inn. Gonzales then asked defendant to accompany him outside, and defendant did so. Defendant testified that since he knew Gonzales was a security guard, he "respected him." Gonzales told defendant that he had information defendant was armed and requested permission to conduct a protective pat-down. Defendant testified that he had "nothing to hide" so he "opened up." Gonzales testified that he found no evidence of a weapon, but because defendant's shirt was untucked and covered his belt, Gonzales requested defendant to open up his pants. Defendant complied with the request.

At this point, the testimony diverges somewhat. Defendant testified that Gonzales questioned him about some involvement with an "incident at a bowling alley." Gonzales denies this. Defendant states that, after finding no weapon, Gonzales patted his shirt pocket four times and asked, "What's this?" Gonzales testified that when he got to defendant's shirt pocket, he felt some small packets and defendant volunteered, "That's my personal stash." Gonzales further testified that when he requested the contents of defendant's shirt pocket, defendant voluntarily removed a tissue containing three "bindles" and handed them to Gonzales. There

is no dispute that the bindles contained cocaine.

The Las Cruces police arrived shortly after this exchange, and Gonzales turned the packets of white powder over to them. At the suppression hearing defendant argued that the Fourth Amendment, U.S. Const. amend. IV, applied to the encounter because Gonzales was a full-time, commissioned law enforcement officer investigating a potential felony offense. Defendant contended that law enforcement officers, held to Fourth Amendment standards in their police work, should not be allowed to violate those standards while working for private security firms. In addition, defendant argued that the Fourth Amendment was violated here because Gonzales did not have articulable facts giving rise to reasonable suspicion to support the stop. *State v. Cobbs*, 103 N.M. 623, 711 P.2d 900 (Ct.App. 1985).

The district judge did not hear argument from the state, but ruled from the bench at the close of defendant's argument. The district court ruled that since Gonzales was acting as a private citizen, the search was not subject to the Fourth Amendment. The motion to suppress was denied. Defendant later entered a plea of guilty, reserving appeal on this issue.

## APPLICABILITY OF THE FOURTH AMENDMENT TO "SPECIAL POLICE"

From the record it appears the district court concluded that since Gonzales was working for a private security firm at the time of the search, the Fourth Amendment did not apply. We think a more particularized inquiry is required and remand for findings of fact pursuant to the guidelines set forth in this opinion.

■ The courts of New Mexico, like other jurisdictions, have accepted the long-standing rule that the protections of the Fourth Amendment[1] do not apply to private individuals acting for their own purposes. *State v. Johnston*, 108 N.M. 778, 780–81, 779 P.2d 556, 558–59 (Ct.App.),

---

1. Defendant did not raise or preserve any claim resting on New Mexico's constitutional provisions and thus the scope of New Mexico constitutional protections will not be considered in

this appeal. *See State v. Vasquez*, 109 N.M. 720, 723, 790 P.2d 517, 520 (Ct.App.), *cert. denied*, 109 N.M. 751, 790 P.2d 1032 (1990).

*cert. denied,* 108 N.M. 771, 779 P.2d 549 (1989); *State v. Perea,* 95 N.M. 777, 779, 626 P.2d 851, 853 (Ct.App.), *cert. denied,* 96 N.M. 17, 627 P.2d 412 (1981); *see Burdeau v. McDowell,* 256 U.S. 465, 475, 41 S.Ct. 574, 576, 65 L.Ed. 1048 (1921). The Fourth Amendment does, however, apply to searches effected by a private party who is acting "as an instrument or agent of the Government." *Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 614, 109 S.Ct. 1402, 1411, 103 L.Ed.2d 639 (1989); *accord State v. Cox,* 100 N.M. 667, 670, 674 P.2d 1127, 1130 (Ct.App.1983); *State v. Doe,* 93 N.M. 143, 145–46, 597 P.2d 1183, 1185–86 (Ct.App.1979).

■ Security personnel hired to protect private business premises are performing traditional police functions when they arrest, question, and search for evidence against criminal suspects. Steven Euller, *Private Security and the Exclusionary Rule,* 15 Harv.C.R.–C.L.L.Rev. 649, 657–58 (1980); Michael A. Braun & David J. Lee, Comment, *Private Police Forces: Legal Powers and Limitations,* 38 U.Chi.L.Rev. 555, 557 (1971). Like the public police, then, such private security personnel have the potential to invade defendants' constitutional rights in many situations. *City of Grand Rapids v. Impens,* 414 Mich. 667, 327 N.W.2d 278 (1982) (Kavanagh, J., dissenting); John M. Burkoff, *Not So Private Searches and the Constitution,* 66 Cornell L.Rev. 627 (1981). The Pennsylvania Supreme Court recognized this danger when it said:

> [I]f detectives and private intermeddlers may, without legal responsibility, peer through keyholes, eavesdrop at the table, listen at the transom and over the telephone, and crawl under the bed, then all constitutional guarantees become meaningless aggregation of words, as disconnected as a broken necklace whose beads have scattered on the floor.

*Commonwealth v. Murray,* 423 Pa. 37, 223 A.2d 102, 110 (1966).

Numerous legal commentators have also acknowledged this danger and recommended that the Fourth Amendment be applied uniformly to all private security police. *See, e.g.,* Burkoff, *supra;* David L. DeNinno, Note, *Private Searches and Seizures: An Application of the Public Function Theory,* 48 Geo.Wash.L.Rev. 433 (1980); Stanley R. Steinberg, Comment, *Private Police Practices and Problems,* 1972 Law & Soc.Ord. 585; Note, *Regulation of Private Police,* 40 S.Cal.L.Rev. 540 (1967). Since the primary motivation for the adoption of the Fourth Amendment was the fear of arbitrary government action,[2] however, most courts have refused to apply the Fourth Amendment uniformly to private security guards. *See, e.g., United States v. Francoeur,* 547 F.2d 891 (5th Cir.), *cert. denied,* 431 U.S. 918, 97 S.Ct. 2182, 53 L.Ed.2d 228, 431 U.S. 923, 97 S.Ct. 2197, 53 L.Ed.2d 238, 431 U.S. 932, 97 S.Ct. 2640, 53 L.Ed.2d 249 (1977); *State v. Buswell,* 460 N.W.2d 614 (Minn.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1107, 113 L.Ed.2d 216 (1991); *State v. McDaniel,* 44 Ohio App.2d 163, 337 N.E.2d 173 (1975); Paul G. Reiter, Annotation, *Admissibility, in Criminal Case, of Evidence Obtained by Search by Private Individual,* 36 A.L.R.3d 553 (1971 & Supp.1991). Indeed, the rationale behind the exclusionary rule has little applicability to private security guards when they are acting exclusively to foster the interests of their private employers. *People v. Scott,* 43 Cal.App.3d 723, 117 Cal.Rptr. 925 (1974); *State v. Keyser,* 117 N.H. 45, 369 A.2d 224 (1977); *City of Univ. Heights v. Conley,* 20 Ohio Misc. 112, 252 N.E.2d 198 (1969).

In many instances, however, private security police serve a public purpose. When they perform a public function or act as agents of a government investigation, their activities may therefore become state action for constitutional purposes. *See, e.g., Griffin v. Maryland,* 378 U.S. 130, 135, 84 S.Ct. 1770, 1772, 12 L.Ed.2d 754 (1964) (amusement park security guard deputized

---

**2.** *New Jersey v. T.L.O.,* 469 U.S. 325, 335, 105 S.Ct. 733, 739, 83 L.Ed.2d 720 (1985); *Harris v. United States,* 331 U.S. 145, 157–58 n. 3, 67 S.Ct. 1098, 1104–05 n. 3, 91 L.Ed. 1399 (1947) (Frank-

furter, J., dissenting); *Boyd v. United States,* 116 U.S. 616, 625, 6 S.Ct. 524, 529, 29 L.Ed. 746 (1886).

as a sheriff was a law enforcement officer); *Pratt v. State,* 9 Md.App. 220, 263 A.2d 247, 250 (1970) (store detective's commission as a state officer required giving *Miranda* warnings); *cf. Marsh v. Alabama,* 326 U.S. 501, 502–03, 66 S.Ct. 276, 276–77, 90 L.Ed. 265 (1946) (deputy sheriff, paid by the company, patrolled a company town and performed services of municipal police).

How, then, should the Fourth Amendment be applied when a private security guard is also a publicly commissioned police officer? Such an individual has an additional motivation for seeking criminal convictions and may be more inclined to transgress the bounds of the Fourth Amendment if given immunity while acting in his "private" capacity. 1 Wayne R. La-Fave, *Search and Seizure* § 1.8(d), at 201 (2d ed.1987); *cf.* Harvey L. Ziff, Note, *Seizures by Private Parties: Exclusion in Criminal Cases,* 19 Stan.L.Rev. 608, 614 (1967) (exclusionary rule not an effective deterrent since private guards have no reason to seek convictions).

This issue is arising with increased frequency with the expansion of private security forces and the escalating employment of former and moonlighting public police officers. *See generally* NMSA 1978, § 61–16–10 (Repl.Pamp.1987) (encouraging "so far as possible regularly employed police officers or deputy sheriffs" be hired as auction inspectors); *Traver v. Meshriy,* 627 F.2d 934 (9th Cir.1980) (police department encouraged bank to employ off-duty police officers). In this capacity,

> The police have no sense of "crossing over" to the other side when they join private security systems. The cause, crimefighting, is largely the same; only the employer has changed. Communication is maintained between the departing government employee who becomes a private security professional and his former colleagues remaining with the public agency.

Euller, *supra,* at 668 (footnote omitted).

For this reason some courts have held that where a private security guard is also commissioned as a special police officer,

the Fourth Amendment automatically applies. *United States v. Dansberry,* 500 F.Supp. 140, 143 (N.D.Ill.1980); *State v. Wilkerson,* 367 So.2d 319, 321 (La.1979); *People v. Eastway,* 67 Mich.App. 464, 241 N.W.2d 249, 250 (1976) (dictum); *People v. Diaz,* 85 Misc.2d 41, 376 N.Y.S.2d 849, 851–52 (1975); *cf. Williams v. United States,* 341 U.S. 97, 99–100, 71 S.Ct. 576, 578–79, 95 L.Ed. 774 (1951) (beating of suspects by "commissioned" private detective was under color of state law). Other courts, while refusing to apply the Fourth Amendment to purely private security guards, have recognized that the result might be otherwise if the guards were also specially commissioned by a public authority. *Waters v. State,* 320 Md. 52, 575 A.2d 1244, 1246–47 (dictum), *cert. denied,* —— U.S. ——, 111 S.Ct. 529, 112 L.Ed.2d 539 (1990); *State v. Hutson,* 649 S.W.2d 6, 8 (Tenn.Crim.App. 1982).

■ The general rule appears to be that whether a "private" person is acting as an agent of the government is determined as a question of fact in light of all the circumstances. *Pleasant v. Lovell,* 876 F.2d 787, 796 (10th Cir.1989); *United States v. Donnes,* 752 F.Supp. 411, 418 (D.Wyo. 1990). We believe "as with much of the law of the fourth amendment, only the specific facts of each case will determine when the line between private and governmental searches has been crossed." 8B James W. Moore *et al., Moore's Federal Practice* ¶ 41.21[1], at 41–346 (2d ed.1991); *accord Ex parte Kennedy,* 486 So.2d 493 (Ala.1986); *Lucas v. United States,* 411 A.2d 360 (D.C.App.1980); *State v. Roccasecca,* 130 N.J.Super. 585, 328 A.2d 35 (1974); *Moore v. State,* 562 S.W.2d 484 (Tex.Crim.App.1978). *Compare United States v. McGreevy,* 652 F.2d 849 (9th Cir. 1981) (action not under color of state law when off-duty policeman working as Federal Express security officer opened package) *with Traver v. Meshriy,* 627 F.2d 934 (9th Cir.1980) (action under color of state law when off-duty policeman working as bank "security teller" detained customer).

■ The burden of establishing government involvement in a search by a privately

employed individual rests with the defendant. *United States v. Feffer,* 831 F.2d 734, 739 (7th Cir.1987); *State v. Watts,* 750 P.2d 1219, 1221 (Utah 1988). However, since we recognize that a commissioned officer may have additional incentive to obtain a conviction by ignoring a suspect's constitutional rights,[3] once it is determined that the search at issue was conducted by a publicly commissioned official, the burden must shift to the state to show the officer was acting in a truly private capacity. *Cf. United States v. Maez,* 872 F.2d 1444, 1452 (10th Cir.1989) (warrantless search of home presumptively unreasonable and state has burden of showing exigency).

■ The Supreme Judicial Court of Massachusetts set forth useful criteria for determining when a publicly commissioned officer is acting in a private capacity in *Commonwealth v. Leone,* 386 Mass. 329, 435 N.E.2d 1036 (1982). The *Leone* court applied the Fourth Amendment to a search conducted by a special police officer privately employed as a plant security guard, but in so doing the court recognized that the exclusionary rule serves a different purpose as applied to a special police officer employed in a private capacity. The court reasoned that "[t]he action he takes on behalf of his employer may be a lawful and necessary means of protecting the employer's property, although it would be impermissible if taken on behalf of the State in pursuit of evidence." *Id.* 435 N.E.2d at 1041. The *Leone* court therefore set forth four issues to be addressed in applying the Fourth Amendment in such settings: (1) whether the guard acted under the control of his private employer; (2) whether the guard's actions clearly related to his private employer's private purposes; (3) whether the search was conducted as a legitimate means of protecting the employer's private property; and (4) whether the methods and manner of the search were reasonable and no more intrusive than necessary. *Id.* at 1041–42.

■ While it may be that the district court would be able to apply the *Leone* test to the present record, neither the court nor the parties could have anticipated the requirements of our decision and therefore we remand for a fact-finding consistent with these criteria. *Cf. State ex rel. Human Servs. Dep't v. Coleman,* 104 N.M. 500, 723 P.2d 971 (Ct.App.1986) (remand where record unclear as to whether trial court properly considered certain evidence).

## ARTICULABLE SUSPICION

Defendant also argues that Gonzales made an investigatory stop without "articulable suspicion." This of course assumes the Fourth Amendment applies to the Gonzales investigation. If the trial court determines the constitutional limitations apply, defendant will certainly have the opportunity to renew this argument.

## CONSENT

■ The state relies upon *State v. Hadley,* 108 N.M. 255, 258, 771 P.2d 188, 191 (Ct.App.1989), to support its contention that, even if we were to find the Fourth Amendment applied, defendant voluntarily consented to the search and produced the cocaine without any compulsion. *But cf. State v. Bedolla,* 111 N.M. 448, 806 P.2d 588 (Ct.App.) (partially overruling *Hadley*), *cert. denied,* 111 N.M. 416, 806 P.2d 65 (1991). While this may be true, the issue of whether a defendant consented to a search is one of fact, *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973), and the state must establish the voluntary nature of the consent by clear and positive evidence. *State v. Goss,* 111 N.M. 530, 534, 807 P.2d 228, 232 (Ct.App.), *cert. denied,* 111 N.M. 416, 806 P.2d 65 (1991). Moreover, the issue of consent may be intertwined with whether Gonzales was acting as a private security guard or a public peace officer when he requested the contents of defendant's pocket; for example, would defen-

---

**3.** While we recognize NMSA 1978, Section 29–1–1 (Repl.Pamp.1990), makes it "the duty of every sheriff, deputy sheriff, constable and every other peace officer to investigate all violations of the criminal laws of the state which are called to the attention of any such officer or of which he is aware," we do not think the intent of this statute was to authorize or require peace officers to act in their official capacity at all times, even though employed by private parties.

**192**

dant voluntarily produce his "personal stash" to someone who identified himself as an investigator for the district attorney? *See People v. Taylor,* 222 Cal.App.3d 612, 271 Cal.Rptr. 785 (1990); Edwin J. Butterfoss, *Bright Line Seizures: The Need for Clarity in Determining When Fourth Amendment Activity Begins,* 79 J.Crim.L. & Criminology 437, 439 (1988) (citizens almost never feel free to end an encounter initiated by actual police officer). Since we find it necessary to remand and the parties did not develop the facts as related to consent or even present the issue to the district court, we will not address this issue.

CONCLUSION

We remand this case for further findings consistent with this opinion. The district court may make such findings upon the existing record or, in its discretion, receive such additional evidence as appears relevant.

IT IS SO ORDERED.

BIVINS and MINZNER, JJ., concur.