865 P.2d 1206

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Hector HERNANDEZ, Defendant–
Appellant.**

**No. 14897.**

Court of Appeals of New Mexico.

Oct. 19, 1993.

Certiorari Denied Nov. 29, 1993.

Tom Udall, Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender, Douglas W. Baker, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

HARTZ, Judge.

Defendant appeals his convictions for auto burglary and possession of burglary tools. Our calendar notice proposed summary affirmance. Defendant has responded with a timely memorandum in opposition. Defendant has also moved to add the issue of whether the State presented sufficient evidence that he intended to commit a felony or theft within the vehicle. We deny the motion as unnecessary because our calendar notice anticipated and addressed the issue Defendant seeks to add. We affirm.

We accept the facts recited in Defendant's docketing statement as the facts in the case. *State v. Calanche,* 91 N.M. 390, 392, 574 P.2d 1018, 1020 (Ct.App.1978). Tommy Urioste testified that on July 13, 1991, he parked his white Ford Escort in the parking lot of the Kmart at 7100 Lomas Boulevard in Albuquerque and went inside the store with his family to shop. When he returned to the car, he found the passenger door ajar and saw that the ignition switch had been damaged. The car stereo and speakers were not damaged and nothing was taken from inside the car. Thomas Gregory, a Kmart security guard, and Kevin McFarland, an employee in the Kmart electronics department, then approached Mr. Urioste. They had been in the parking lot looking at Gregory's new Jeep. About five minutes before Urioste returned to his car, they had seen a man getting out of the Escort and walk north toward Lomas. When Urioste told them that something had happened to his car, Gregory and McFarland pursued the man they had seen in the car and "got him to come back with us." At the Kmart Gregory instructed Defendant to empty his pockets, handcuffed him, and asked him questions. Albuquerque Police Officer Kelly Burt later arrived at the Kmart security office and was informed that Defendant had admitted being in the Escort and that two screwdrivers had been obtained from Defendant's pockets. After Defendant was arrested, Albuquerque Police Sergeant Ruben Davalos advised Defendant of his constitutional rights and questioned him. Davalos testified that Defendant admitted that he had purchased a screwdriver at the Kmart, opened an unlocked door to the Escort, and tried to start the car by inserting something into the ignition. At trial Defendant essentially repeated what he had admitted to Davalos, testifying that he had tried to start the car by jamming a screwdriver into the ignition.

Defendant contends (1) that he was charged under the wrong statute, (2) that there was insufficient evidence to sustain either conviction, (3) that the evidence should be suppressed because of unconstitutional

conduct by security guard Gregory, and (4) that his conviction constituted double jeopardy.

### Applicable Statutes—The Specific–Statute Doctrine

■ Defendant contends that the district court should have dismissed his indictment for auto burglary, NMSA 1978, § 30–16–3(B) (Repl.Pamp.1984), and possession of burglary tools, NMSA 1978, § 30–16–5 (Repl. Pamp.1984), because the predicate conduct is more specifically covered by statutes prohibiting attempted unlawful taking of a motor vehicle, NMSA 1978, § 66–3–504 (Repl. Pamp.1989), and tampering with a vehicle, NMSA 1978, § 66–3–506(B), (D) (Repl. Pamp.1989). He relies on the specific-statute doctrine.

When a general statute and a specific statute both cover a particular subject matter, the specific statute is considered to have been enacted as an exception to the general statute, and, in a criminal case, defendant must be tried under the more specific statute. *State v. Blevins*, 40 N.M. 367, 60 P.2d 208 (1936). In determining whether the offenses covered by the two statutes are the same, this court looks to the language of the statute and the elements of the crime to determine whether the statutes condemn the same offense and require the same proof.

*State v. Higgins*, 107 N.M. 617, 620, 762 P.2d 904, 907 (Ct.App.1988); *accord State v. Whitaker*, 110 N.M. 486, 488–89, 797 P.2d 275, 277–78 (Ct.App.), *cert. denied*, 109 N.M. 631, 788 P.2d 931 (1990).

The offense of burglary requires an unauthorized entry. Section 30–16–3. Unauthorized entry is not an element of either unlawful taking of a vehicle, § 66–3–504, or tampering with a vehicle, § 66–3–506. This difference in the elements of the offenses is sufficient ground to reject Defendant's contention with respect to the burglary charge. *See id.* We also note that the burglary statute serves the purpose of protecting certain "prohibited space," *see State v. Rodri-*

*guez*, 101 N.M. 192, 194, 679 P.2d 1290, 1292 (Ct.App.), *cert. denied*, 101 N.M. 189, 679 P.2d 1287 (1984), which distinguishes burglary from the offense of unlawful taking of a vehicle. *See Higgins*, 107 N.M. at 620, 762 P.2d at 907 (in applying specific-statute doctrine, different purposes and policies of statutes may be examined). Defendant's contention that he should not have been prosecuted for possession of burglary tools is likewise without merit.

### Sufficiency of the Evidence

■ "Burglary consists of the unauthorized entry of any vehicle ... with the intent to commit any felony or theft therein." Section 30–16–3. The evidence would not support an inference that Defendant intended to steal anything from within the car. The State's theory therefore must have been that Defendant had the requisite intent because he intended to steal the car. Defendant argues that an intent to steal the car is not an intent to commit a theft "therein." "The burglary statute on its face," he argues, "requires proof of intent to steal or otherwise do wrong *within* a structure, not an intent to steal the structure itself." We disagree.

Theft of the car itself may be an offense committed within the vehicle. If one intends to commit in a car acts that accomplish the crime, then one intends to commit the crime in the car. Theft of a car can be accomplished from within the vehicle. *See State v. Stephens*, 601 So.2d 1195 (Fla.1992); *People v. Steppan*, 105 Ill.2d 310, 85 Ill.Dec. 495, 473 N.E.2d 1300 (1985). We agree with the rationale of the unanimous Florida Supreme Court:

The use of the word "therein" plainly indicates that the crime of burglary can exist if the defendant formed an intent to commit a crime "in that place." There is no requirement that the crime must be one that can be completed solely within the fixed limits of that particular place, only that the crime is intended to be committed there. This obviously can include an intent to commit car theft, because such a crime can be committed "in that place."

*Stephens*, 601 So.2d at 1196.

Given our construction of the burglary statute, Defendant also must lose his argu-

ment regarding the sufficiency of the evidence of possession of burglary tools. *See State v. Jennings,* 102 N.M. 89, 92, 691 P.2d 882, 885 (Ct.App.) (intent to use, rather than actual use, will support conviction), *cert. quashed,* 102 N.M. 88, 691 P.2d 881 (1984).

### *Motion to Suppress*

 Defendant argues that the district court should have granted his motion to suppress statements and physical evidence that were the product of actions by security guard Gregory. Relying on *State v. Murillo,* 113 N.M. 186, 824 P.2d 326 (Ct.App.1991), Defendant argues that Gregory was performing a "public function," thereby triggering Constitutional safeguards. He points to testimony by Gregory's supervisor that Gregory's duties included cooperating with and assisting law enforcement personnel.

Such duties, which are probably common to almost all private security personnel, do not suffice to make a private security guard an agent of the state whose acts are subject to Constitutional restraints. *Murillo* recognized the general rule that a private person's behavior does not constitute state action unless the person is "acting 'as an instrument or agent of the Government.'" *Id.* at 189, 824 P.2d at 329 (quoting *Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 614, 109 S.Ct. 1402, 1411, 103 L.Ed.2d 639 (1989)). Under *Murillo* when the actor is a publicly commissioned officer, the State carries the burden of showing that the officer was acting in a private capacity. *Id.* 113 N.M. at 191, 824 P.2d at 331. But Gregory was not a publicly commissioned officer. Defendant therefore had the burden to show that Gregory was acting as a government agent or instrument. *See id.* at 190–91, 824 P.2d at 330–31. This is a question of fact to be determined on a case-by-case basis. *Id.* at 190, 824 P.2d at 330.

It is undoubtedly in the interest of a private retail business that potential patrons believe that they will not be victimized by crime while shopping at the business. Gregory's actions thus served his employer. The district court could reasonably find that Defendant had not satisfied his burden of establishing that Gregory was acting as an agent or instrument of government. We are not persuaded by Defendant's argument that there is something unique about shopping centers that blurs the line between a guard performing a public or private function. We affirm the denial of Defendant's suppression motion.

### *Double Jeopardy*

Defendant argues, pursuant to *State v. Franklin,* 78 N.M. 127, 129, 428 P.2d 982, 984 (1967), and *State v. Boyer,* 103 N.M. 655, 658–60, 712 P.2d 1, 4–6 (Ct.App.1985), that his conviction violates the prohibition against double jeopardy because he may be prosecuted in the future for attempted unlawful taking of a motor vehicle. The short answer is that he has not been prosecuted for that crime. Hence, there has been no double jeopardy.

We affirm Defendant's convictions.

**IT IS SO ORDERED.**

APODACA and FLORES, JJ., concur.