[No. H004476. Sixth Dist. May 3, 1988.]

THE PEOPLE, Plaintiff and Appellant, v.
ROBIN BROUILLETTE, Defendant and Respondent.

## COUNSEL

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Stan M. Helfman and John T. Murphy, Deputy Attorneys General, for Plaintiff and Appellant.

Erwin F. Fredrich for Defendant and Respondent.

## OPINION

**COTTLE, J.**—Defendant Robin Brouillette was charged by information with possession of cocaine (Health & Saf. Code, § 11350, subd. (a)) and possession of marijuana (Health & Saf. Code, § 11357, subd. (b)). At the preliminary examination, the magistrate heard testimony and denied a Penal Code section 1538.5 motion to suppress the drugs found in Brouillette's wallet. In superior court, Brouillette, in a combined Penal Code 995 and 1538.5 motion, again challenged the legality of the search of her wallet. After an in camera hearing and additional testimony in accordance with section 1538.5, subdivision (i), the superior court issued a detailed decision and order in which it concluded that Brouillette had a reasonable expectation of privacy with regard to the contraband contents of the wallet even though the wallet had been inadvertently misplaced. In reliance on *People* v. *Zelinski* (1979) 24 Cal.3d 357 [155 Cal.Rptr. 575, 594 P.2d 1000], it determined that the cocaine and marijuana should be excluded as illegally seized evidence.

The People appeal from the dismissal of the charges pursuant to Penal Code section 1385. We reverse.

### FACTS

The following facts are taken from the written decision and order of the superior court:

"A Vallco Park Shopping Mall patron gave Cheryl Stern, a uniformed private security officer working for the mall, a wallet found in one of the

mall's common areas. Stern took the wallet to the mall's security office. To protect itself from liability for valuable items, the mall requires its employees to go through lost property with another person to verify valuables and identification, then log the property into the lost and found property locker. Stern first found a wad of money. She then inventoried the wallet's contents and found a driver's license with Brouillette's name on it, a fishing license, a home video club card, checks, some of which were imprinted with Brouillette's name, a partial marijuana joint, and a paper bindle which, after being opened, yielded a powder that resembled cocaine. Although Stern equivocated about the order in which she found the items, it is established that she found the money and driver's license before she found the bindle and joint. Thinking the bindle contained drugs, Stern's supervisor, Lt. Sanders, called the County Sheriff. Deputy Mecir responded, looked at Brouillette's driver's license, examined the powder, and concluded it was cocaine.

"While Mecir was at the office, Brouillette called to retrieve her wallet. Mecir asked Sanders to have someone escort Brouillette to the security office because it was hard to find. After Mecir *Mirandized* [*Miranda* v. *Arizona* (1966) 384 U.S. 436 (16 L.Ed. 694, 86 S.Ct. 1602, 10 A.L.R.3d 1974)] Brouillette, she waived her rights and admitted the wallet and bindle was [*sic*] hers.

"At the hearing, Stern acknowledged (1) she could have inventoried the entire green bindle without looking inside; and (2) Vallco Park makes its offices available to the Sheriff to make shoplifting and other kinds of arrests."

The superior court stated also that the mall's private security officers "operate like police—they wear uniforms and organize themselves in a para-military style," that they "helped to apprehend Brouillette," that the mall had a "regular policy to make its officers available to the sheriff" suggesting "an ongoing mutuality of interest between police and the security people which, if not creating an agency, comes very close" and that "[a]lthough privately retained, mall security hold themselves out to be and are looked upon by others as police authority." Finally, it added that the inspection of the contents of the wallet by the private security guard was not in fact done to protect the interests of the guard's employer but "was an investigation."

## DISCUSSION

### (1) *Standard of Review*

■ "On appeal, we review the evidence in a light favorable to the trial court's ruling on the suppression motion. . . . We uphold those express or

implicit findings of fact by the trial court which are supported by substantial evidence. . . . Insofar as the evidence is uncontradicted, we do not engage in substantial evidence review, but face pure questions of law. . . . We must independently determine whether the facts support the court's legal conclusions." (*People* v. *Long* (1987) 189 Cal.App.3d 77, 82-83 [234 Cal.Rptr. 271], citations omitted.)

■ The enactment of California Constitution, article I, section 28, subdivision (d) (Proposition 8) on June 8, 1982, permits us to suppress evidence only if that result is compelled by the United States Constitution; a violation of the California Constitution is no longer a basis for exclusion. (*In re Lance W.* (1985) 37 Cal.3d 873, 884-888, 896 [210 Cal.Rptr. 631, 694 P.2d 744].) In interpreting the United States Constitution, as in the case of all federal law, we are bound by the decisions of the United States Supreme Court and find persuasive authority in the decisions of other federal courts. (See *People* v. *Bradley* (1969) 1 Cal.3d 80, 86 [81 Cal.Rptr. 457, 460 P.2d 129].) We are also bound by the decisions of the California Supreme Court.

(2) *Expectation of Privacy*

■ "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." (*United States* v. *Jacobsen* (1984) 466 U.S. 109, 113 [80 L.Ed.2d 85, 94, 104 S.Ct. 1652], fn. omitted.) We shall assume, without deciding, that Brouillette had a reasonable expectation of privacy in the contents of her wallet in the circumstances of this case.

(3) *The Search by Mall Security Guards*

■ In acting as they did, the mall security guards acted in a purely private capacity and did not assert the power of the state, so the Fourth Amendment does not apply. (*People* v. *De Juan* (1985) 171 Cal.App.3d 1110, 1121 [217 Cal.Rptr. 642]. See *People* v. *Zelinski, supra,* 24 Cal.3d at pp. 366, 368.)

■ The protection of the Fourth Amendment against an unreasonable search generally applies only to government actions and does not extend to searches carried out by private persons. (*Burdeau* v. *McDowell* (1921) 256 U.S. 465 [65 L.Ed. 1048, 41 S.Ct. 574, 13 A.L.R. 1159]; *Coolidge* v. *New Hampshire* (1971) 403 U.S. 443, 487 [29 L.Ed.2d 564, 595, 91 S.Ct. 2022]; *In re William G.* (1985) 40 Cal.3d 550, 558 [221 Cal.Rptr. 118, 709 P.2d 1287].) ■ Brouillette claims the exclusionary rule applies to the conduct of the mall's private security guards, relying upon the reasoning of the California Supreme Court in *People* v. *Zelinski, supra,* a cause decided on

the basis of an interpretation of the California Constitution at a time when that Constitution provided an independent ground for the exclusion of evidence. We shall assume, without deciding, that *Zelinski* is a correct construction of the federal exclusionary rule.

In *Zelinski,* department store detectives saw the defendant shoplifting, made a citizen's arrest and conducted a search which led to the discovery of illegal drugs. The trial court denied the motion to suppress; the California Supreme Court reversed. First, the court recognized that conduct of private security personnel "poses a threat to privacy rights of Californians that is comparable to that which may be posed by the unlawful conduct of police officers." (24 Cal.3d at p. 366.) Second, it determined that the exclusionary rule would be an effective deterrent since private security guards, like police but unlike ordinary citizens, regularly perform "quasi-law enforcement activities." (*Ibid.*) Those points are equally applicable here.

But there was a third point that distinguishes this case from *Zelinski.* The Supreme Court there held that store detectives *when they make an arrest* do not act in a purely private capacity but "assert the power of the state." (24 Cal.3d at pp. 366, 368.) It stated that it was not deciding that "all of the varied activities of private security personnel" are governed by the restraints of the exclusionary rule. (*Id.* at p. 366.) The security guards here did not make an arrest or in any other way assert the power of the state. They merely inspected lost property and called the police. The decision reached by the trial court required an implicit finding that the security guards asserted the power of the state when they took the particular action of inspecting the wallet, but that is not supported by substantial evidence. There was evidence to support the findings that the security guards dressed like police and are looked upon by others as representing police authority, and that they assisted the police by calling the deputy sheriff to the mall and allowing Brouillette to come to the mall office to be arrested when she perhaps thought that she was coming to collect her wallet. There was nothing to show that they made the inspection of the wallet as agents of the state.

In *People* v. *De Juan, supra,* 171 Cal.App.3d 1110, 1121, a case in which the search occurred before the enactment of Proposition 8, the court treated the requirements of state and federal exclusionary rules as coextensive and cited *Zelinski* for the rule that is consistent with our decision: "[T]he constitutional proscriptions will be applied and suppression will be ordered when the search or seizure was conducted by a member of a private security force in furtherance, not of a private interest, but a public or governmental interest so that, in essence, it constituted performance of a law enforcement function."

### (4) *The Later Search*

Since the private security guards had inspected the wallet and discovered both the marijuana and the cocaine before the deputy sheriff arrived, the later actions of the police in repeating the inspection of the contents of the wallet "did not infringe any constitutionally protected private interest that had not already been frustrated as the result of private conduct." (*United States* v. *Jacobsen, supra,* 466 U.S. 109, 126 [80 L.Ed.2d 85, 102].)

In *Jacobsen,* employees of a freight carrier discovered bags of white powder (later shown to be cocaine) while inspecting a damaged package that was in their care. They reclosed the package and called in federal agents. The court found that this was not an illegal search even if the motive of the employees who carried out the inspection was a suspicion of illegality. "Whether those invasions were accidental or deliberate, and whether they were reasonable or unreasonable, they did not violate the Fourth Amendment because of their private character." (466 U.S. at p. 115 [80 L.Ed.2d at p. 95], fn. omitted.) When the federal agents arrived, they reopened the package, finding those same bags of cocaine. This was held not to be an unlawful search since the private inspection had already occurred.

### DISPOSITION

We reverse the decision of the superior court. We order that it vacate its order suppressing evidence and its order of dismissal, and we remand for further proceedings consistent with this order.

Agliano, P. J., and Elia, J., concurred.

A petition for a rehearing was denied May 23, 1989, and respondent's petition for review by Supreme Court was denied July 20, 1989. Mosk, J. and Broussard, J., were of the opinion that the petition should be granted.