[No. H006114. Sixth Dist. July 26, 1990].

THE PEOPLE, Plaintiff and Respondent, v.
ADAM JASON TAYLOR, Defendant and Appellant.

**COUNSEL**

Elizabeth Bader and Dallas Sacher, under appointments by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Herbert F. Wilkinson, David D. Salmon and Ronald Niver, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**PREMO, J.**—Asserting that a search by private security guards which yielded LSD and marijuana was illegal, Adam Jason Taylor appeals from the denial of his motion to suppress evidence (Pen. Code, § 1538.5, subd. (m)).[1] We affirm.

### FACTS

On April 10, 1989, at 9:25 p.m., two security guards employed by the Seaside Security Company, the corporate security department of the Seaside Land Company, owner of the Santa Cruz Beach Boardwalk, encountered appellant and three others on a small path under the boardwalk leading from a parking lot to the beach. The four had open containers of beer. One, a Mr. Light, was smoking a marijuana cigarette. Appellant had a baggie containing a green substance on his lap.

Officer Kerr asked appellant for the baggie and identification. Appellant handed him the baggie, but said he had no identification. Kerr then asked Light, who had turned over both his cigarette and identification, if he had

---

[1] Further statutory references are to the Penal Code unless otherwise stated.

more drugs or contraband on his person. Light said that he did not, and agreed to a search which yielded no additional drugs.

Kerr then asked appellant if he had more drugs on his person and if he could search him. Appellant began to tremble and shake. He denied he had drugs, agreed to a search, and opened and handed over his pouch, known as a "fannypack."[2] After finding no contraband in it, Kerr patted down appellant's pants. As his hand touched appellant's left pocket, he felt a baggie and heard a rustling or crumpling sound. He partially removed four similar baggies of marijuana and two individually wrapped baggies containing several sheets of colored perforated paper which he thought contained LSD. Kerr pushed the items back into appellant's pocket and handcuffed him. He finished the patdown for weapons, found none, and transported both appellant and Light to a security station operated by Seaside Security Company where the Santa Cruz police were called.

Police Officer Carr responded. Kerr told him that appellant and Light were detained on narcotics charges, and that he believed appellant had marijuana and LSD in his pocket. Carr then searched appellant and removed the drugs from appellant's pocket. Appellant was ultimately charged with possession of LSD for sale (Health & Saf. Code, § 11378) and possession of marijuana (Health & Saf. Code, § 11357, subd. (b)).

Appellant's motion to suppress the evidence was denied. He then pled guilty to a violation of possession of LSD (Health & Saf. Code, § 11377), conditioned on no prison commitment. The marijuana charge was dismissed. The court placed appellant on probation for five years, and ordered him to serve six months in the county jail. This appeal ensued.

## CONTENTIONS ON APPEAL

Appellant asserts that since private individuals may not search each other for contraband under California law, the evidence was illegally seized and should be excluded. Second, he contends that since the security guards were private individuals who arrested him without complying with statutes defining how private citizens may exercise the power to arrest, this court should refuse to give binding legal effect to his consent.

Alternatively, he claims that the guards were not acting in a purely private capacity, since they were carrying out a police function properly reserved to the state, and because the guards were acting jointly with the police. Furthermore, he claims that the conduct of the guards must be

---

[2] Appellant claims that he consented to a search of the fannypack only.

imputed to the state because they were subject to the state's licensing and regulatory scheme. (Bus. & Prof. Code, § 7544 et seq.) Therefore, a Fourth Amendment analysis is required.

Appellant has withdrawn his final claim, that the state exceeded the scope of the initial private search and of any consent when the contents of his pocket were tested later without the authorization of a search warrant.

## STANDARD OF REVIEW

■ As this court has recently stated, " 'On appeal, we review the evidence in a light favorable to the trial court's ruling on the suppression motion . . . . We uphold those express or implicit findings of fact by the trial court which are supported by substantial evidence . . . . Insofar as the evidence is uncontradicted, we do not engage in substantial evidence review, but face pure questions of law . . . . We must independently determine whether the facts support the court's legal conclusions.' [Citation.]" (*People v. Brouillette* (1989) 210 Cal.App.3d 842, 845-846 [258 Cal.Rptr. 635].)

To the extent the facts are disputed, all presumptions, inferences and credibility assessments supporting the findings of the court below must be implied, and the trial court's findings must be upheld if supported by substantial evidence. (*People v. Brouillette, supra,* 210 Cal.App.3d at pp. 845-846.) ■ "Evidence, to be 'substantial' must be 'of ponderable legal significance . . . reasonable in nature, credible, and of solid value.' [Citations.]" (*People v. Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].)

## PRIVATE ACTION

■ Appellant contends that if the search by the security guard was a private search, it violated section 846, which strictly limits private citizen searches to removing offensive weapons on the person of the arrestee.

"An arrest is taking a person into custody, in a case and in the manner authorized by law. An arrest may be made by a peace officer or by a private person." (§ 834.) A private person may arrest another for a public offense committed or attempted in his presence; for a felony, although not committed in his presence; or when a felony has been in fact committed and the private person has reasonable cause for believing the person arrested to have committed it. (§ 837.) A private person has the duty to take the person arrested before a magistrate or deliver him to a peace officer without unnecessary delay. (§ 847.)

■ Our courts have repeatedly held that a citizen is not authorized by section 846 to conduct a search for contraband "incidental" to the arrest, or to seize such contraband upon recovering it. "[A]bsent statutory authorization, private citizens are not and should not be permitted to take property from other private citizens." (*People* v. *Zelinski* (1979) 24 Cal.3d 357, 363 [155 Cal.Rptr. 575, 594 P.2d 1000], fn. omitted.)

■ Therefore, appellant argues that although Kerr had cause to arrest "[f]or a public offense [possession of marijuana (Health & Saf. Code, § 11357)] committed . . . in his presence[,]" (§ 837, subd. 1), he was not justified in seizing and examining the baggies.

Appellant suggests exclusion of the evidence as a proper remedy for an unlawful search by a private citizen. However, "[t]he exclusionary rules were fashioned 'to prevent, not to repair,' and their target is official misconduct. They are 'to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it.' [Citation.] But it is no part of the policy underlying the Fourth and Fourteenth Amendments to discourage citizens from aiding to the utmost of their ability in the apprehension of criminals. If, then, the exclusionary rule is properly applicable . . . , it must be upon the basis that some type of unconstitutional police conduct occurred." (*Coolidge* v. *New Hampshire* (1971) 403 U.S. 443, 488 [29 L.Ed.2d 564, 595-596, 91 S.Ct. 2022].)

Therefore, the protection of the Fourth Amendment does not extend to searches carried out by private persons. (*People* v. *Brouillette, supra*, 210 Cal.App.3d at p. 846.) Appellant's remedy is civil in nature and can be pursued, as appropriate, as in any other action involving civil wrongs.

### CONSENT

■ Next, appellant contends that "finding consent would abrogate California's statutory scheme which strictly defines when private citizens may exercise full powers of arrest," and that this court "should refuse to give binding legal effect to [his] consent."

Appellant relies on *People* v. *Martin* (1964) 225 Cal.App.2d 91, 95 [36 Cal.Rptr. 924], for the proposition that consent given in submission to express or implied authority cannot be said to be free and voluntary and the fruits must be deemed to be inadmissible. In *Martin,* two Los Angeles Police Department narcotics officers made an arrest beyond the city limits, and sought and received consent to search. At that time, a police officer for one geographical district had no official power to arrest outside that district. The Court of Appeal therefore held that the officers merely had the powers

of private citizens and no authority to search beyond removal of all offensive weapons from the person of the arrestee. The court excluded the evidence.

However, in that case, the police officers were asserting the power of the state when they identified themselves as police officers, arrested Martin, immediately questioned him about his "scabs," ordered him to remove his jacket so they could see his tracks, and then asked for and received permission and his cooperation in searching his hotel room.

Here, if the security guards were acting in a private capacity, the exclusionary rule does not apply. In a case where private investigators, hired by a father to discover what happened to his two missing sons, stopped and searched the automobile of a defendant later convicted of the sons' murder, the court said: "[a]lthough their conduct was outrageous, unquestionably tortious, and no doubt violative of several penal statutes, those are not the questions here. The question we confront is whether [substantial evidence supports] the trial court's findings [that] the investigators were serving a private . . . rather than a public interest . . . ." (*People* v. *De Juan* (1985) 171 Cal.App.3d 1110, 1121 [217 Cal.Rptr. 642].)

## STATE ACTION

### *1. Public Purpose*

Next, appellant contends that the state is involved in the security guards' actions because they were operating jointly with the police and because they acted solely for a public purpose.

The guards' duties were to patrol the boardwalk, and not to generally enforce laws. However, he asserts that when the guards questioned him, searched him for contraband, and then arrested him, they were acting for a public purpose.

Appellant relies on *People* v. *Zelinski, supra,* 24 Cal.3d at pages 366-368, in which the Supreme Court held that if private security personnel were not acting in a purely private capacity but were fulfilling a public function in bringing violators of the law to public justice, they were asserting the power of the state, and were therefore subject to the constitutional proscriptions that secure an individual's right to privacy.

In *Zelinski,* the court relied on *United States* v. *Price* (1966) 383 U.S. 787, 794, footnote 7 [16 L.Ed.2d 267, 272, 86 S.Ct. 1152], for the proposition that "a person does not need to be an officer of the state to act under color

of law and therefore be responsible, along with such officers, for actions prohibited to state officials when such actions are engaged under color of law. [Citations.]" (24 Cal.3d at p. 367.) However, the court held that "exclusion of the illegally seized evidence is required by article 1, section 13 of the California Constitution." (*People* v. *Zelinski, supra*, 24 Cal.3d at p. 368.)

*Zelinski* is a pre-Proposition 8 case. This court recently wrote: "The enactment of California Constitution, article I, section 28, subdivision (d) (Proposition 8) on June 8, 1982, permits us to suppress evidence only if that result is compelled by the United States Constitution; a violation of the California Constitution is no longer a basis for exclusion. [Citation.] In interpreting the United States Constitution, as in the case of all federal law, we are bound by the decisions of the United States Supreme Court and find persuasive authority in the decisions of other federal courts. [Citation.] We are also bound by the decisions of the California Supreme Court." (*People* v. *Brouillette, supra*, 210 Cal.App.3d at p. 846.) Only if this search may be fairly characterized as state action does the exclusionary rule apply. (*Ibid.*)

The Ninth Circuit recently held: "to the extent *Zelinski* expanded the concept of state action under the California Constitution beyond federal law, it was abrogated by Proposition 8." (*Collins* v. *Womancare* (9th Cir. 1989) 878 F.2d 1145, 1154.) "*Zelinski* directly conflicts with and is superseded by *Lugar* [v. *Edmondson Oil Co.* (1982) 457 U.S. 922] [73 L.Ed.2d 482, 102 S.Ct. 2744]." (*Ibid.*)

Under federal law, searches and seizures by private security employees have traditionally been viewed as those of a private citizen and consequently not subject to Fourth Amendment proscriptions. (*United States* v. *Lima* (D.C.App. 1980) 424 A.2d 113, 118.

Although the United States Supreme Court has not considered the constitutional status of private police forces (*Collins* v. *Womancare, supra*, 878 F.2d at p. 1150), *Lugar* v. *Edmondson Oil Co., Inc., supra*, 457 U.S. 922, 937 [73 L.Ed.2d 482, 495], mandates a two-prong test to determine whether state action is involved in the deprivation of a federal right.

First, the deprivation must be caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state or by a person for whom the state is responsible. Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. *Lugar* explains that "[t]his may be because he is a state official, because he has acted together with or has obtained significant aid from state

officials, or because his conduct is otherwise chargeable to the State." (457 U.S. at p. 937 [73 L.Ed.2d at p. 495].)

■ Turning to this case, the first question is whether the deprivation of appellant's right to be free from unreasonable searches and seizure resulted from the exercise of a right or privilege created by the state and which was traditionally exclusive to the state.

In *Zelinski*, the California Supreme Court said: "the store employees arrested defendant pursuant to the authorization contained in Penal Code section 837, and the search which yielded the narcotics was conducted incident to that arrest. Their acts, engaged in pursuant to the statute, were not those of a private citizen acting in a purely private capacity. Although the search exceeded lawful authority, *it was nevertheless an integral part of the exercise of sovereignty allowed by the state to private citizens*. In arresting the offender, the store employees were utilizing the coercive power of the state to further a state interest. Had the security guards sought only the vindication of the merchant's private interests they would have simply exercised self-help and demanded the return of the stolen merchandise. Upon satisfaction of the merchant's interests, the offender would have been released. By holding defendant for criminal process and searching her, they went beyond their employer's private interests." (*People* v. *Zelinski, supra*, 24 Cal.3d at p. 367, italics added, fn. omitted.)

■ For the first prong of the *Lugar* test, it is important to determine whether the state, in enacting statutes describing the circumstances in which citizens may arrest, was creating in citizens a right or privilege which was traditionally exclusive to the state.

Federal courts have not so held. "Arrest has never been an exclusively governmental function. Not all state-authorized coercion is government action." (*Spencer* v. *Lee* (7th Cir. 1989) 864 F.2d 1376, 1380.) "There have been citizen arrests for as long as there have been public police—indeed much longer. In ancient Greece and Rome, and in England until the nineteenth century, most arrests and prosecutions were by private individuals." (*Ibid.*)

In *United States* v. *Lima, supra*, 424 A.2d at page 120, in discussing a District of Columbia citizen's arrest statute, the court said: "Neither can it be argued that Congress intended to make the citizen an agent of the state for the purposes of making arrests by enacting a statute codifying the citizen common law power of arrest. [Citation.] Congress' intent by enacting this statute was to define and restrict the private citizen's common law right to arrest . . . . By so limiting the citizen's power of arrest, Congress recog-

nized that 'law enforcement should generally be carried out by professionals.' [Citations.] A citizen's arrest power presumes that a law-abiding citizen for his own personal purposes may desire to stop criminal activity just as a merchant has a personal interest in deterring theft of his goods. Consequently, Congress has recognized these legitimate private interests of apprehending persons committing certain crimes within their presence. The fact that a private person makes a citizen's arrest does not automatically transform that individual into an agent of the state. His conduct is not actionable for any deprivation under color of law of rights, privileges or immunities secured by the Constitution."

Since the issue of what constitutes action under color of state law is ultimately one of federal, not state law (*Gorenc* v. *Salt River Project Agr. Imp. & Power* (9th Cir. 1989) 869 F.2d 503, 505), it appears that appellant has not satisfied the first prong of the *Lugar* test by showing that the right to arrest was traditionally exclusive to the state.

### 2. Joint Operation

Appellant's next contention is that the security guards were operating jointly with the police, and that their action should be imputed to the state.

Appellant refers us to our analysis in *Brouillette* (distinguishing *Zelinski*), where we stated that "[t]he security guards here did not make an arrest or in any other way assert the power of the state. They merely inspected lost property [finding marijuana and cocaine] and called the police. The decision reached by the trial court [suppressing the evidence] required an implicit finding that the security guards asserted the power of the state when they took the particular action of inspecting the wallet, but that is not supported by substantial evidence. There was evidence to support the findings that the security guards dressed like police and are looked upon by others as representing police authority, and that they assisted the police by calling the deputy sheriff to the mall and allowing Brouillette to come to the mall office to be arrested when she perhaps thought that she was coming to collect her wallet. There was nothing to show that they made the inspection of the wallet as agents of the state." (*People* v. *Brouillette, supra*, 210 Cal.App.3d at p. 847.)

Therefore, appellant contends, if we consider the same factors that we did in *Brouillette*, we should come to the conclusion that the security guards in the instant case were asserting the power of the state.

First, he asserts, the security guards acted jointly with the local police in that the private police maintained "Station 2," the detention center, but the

public police used it also. In addition, appellant charges that since the guards had access to police radios, they should have used them and called the police, rather than "doing the dirty work of the invasive search" first.

Second, the guards exercised the authority of the state by arresting appellant, handcuffing him, and searching him. Third, the officers were clothed in the indicia of state authority. They looked like state-authorized police officers. They wore uniforms of light green pants, "duty belts," and tan shirts with badges and shoulder patches reading "Security, Santa Cruz Beach Boardwalk." They carried handcuffs, batons, and two-way radios. They also carried police radios. Furthermore, they patrolled an area used by the public which was not posted with "no trespassing" signs, and which provided access to a public beach. When these guards accosted appellant, they did not identify themselves as private security guards.

Finally, the guards did not act for a purely private purpose. Appellant and his companions were not harming Seaside Land Company's property. The officers were not afraid of appellant. Rather than protecting their employer's property by telling appellant and his companions to leave, since the Boardwalk was closed for business, they acted for the sole purpose of law enforcement: to get evidence of crime. "They wanted to find contraband: all their questions to Mr. Taylor were directed to that end. Since the Officer's [*sic*] sole purpose was to act in a law enforcement capacity, the Fourth Amendment must apply to their activities."

" '[T]he joint action inquiry focuses on whether the state has "so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity . . . ." ' [Citation.] Joint action therefore requires a substantial degree of cooperative action." (*Collins* v. *Womancare, supra,* 878 F.2d at p. 1154.) "[M]erely complaining to the police does not convert a private party into a state actor. [Citations.] Nor is execution by a private party of a sworn complaint which forms the basis of an arrest enough to convert the private party's acts into state action. [Citation.]" (*Id.* at p. 1155.) There was no joint action where a private party, besides effecting the citizen's arrest, also transported the arrestee to the police station, attempted to persuade police to file charges, and swore out a complaint against the arrested party. (*Ibid.*)

In light of the foregoing cases, the facts presented by appellant fail to establish that the state has " ' " "so far insinuated itself into a position of interdependence with [Seaside Security employees] that it must be recognized as a joint participant in the challenged activity." ' [Citation.]" (*Collins* v. *Womancare, supra,* 878 F.2d at p. 1155.)

First, the impetus for the arrests came from the security guards. The evidence showed that the actions of the security guards sprang solely from their observations at the time. Next, appellant presented no evidence that the Seaside Security Company had contracts or agreements with the city, the county, or the state. There was no evidence from which this court can infer a "prearranged plan, customary procedure, or policy that substituted the judgment of a private party for that of the police . . . ." (*Carey* v. *Continental Airlines, Inc.* (10th Cir. 1987) 823 F.2d 1402, 1404.) In short, there was no indication in the record that the state agents failed to use independent judgment or in any way coerced or encouraged the security guards to effect the citizen's arrest. (See *San Fran. Arts & Athletics* v. *U. S. O. C.* (1987) 483 U.S. 522, 538 [97 L.Ed.2d 427, 449-450, 107 S.Ct. 2971].)

Furthermore, there is no evidence in the record to establish that the security guards' uniform was in any way similar in color to that of the Santa Cruz police department. The guards wore badges and shoulder patches marked "security." They did not carry guns. Although they did not identify themselves verbally as security guards, they did not verbally claim to be police officers. The evidence showed that their private purpose was to patrol Seaside Land Company's property. There was no evidence either establishing or negating specific instructions. Thus, there is no reason to conclude that their duties were limited to deterring crimes against property such as vandalism, littering, or trespass. (§§ 594, 374.4, 602.)

Although the security guards made an arrest, federal cases cited *ante* disagree with *Zelinski*'s assertion "that store detectives *when they make an arrest* do not act in a purely private capacity but 'assert the power of the state.'" (*People* v. *Brouillette, supra*, 210 Cal.App.3d at p. 847 citing *People* v. *Zelinski, supra*, 24 Cal.3d at pp. 366, 368.) The *Lugar* test, requiring a showing of deprivation of a state created right by persons who can be shown to be state actors, was not satisfied.

Finally, the mere fact that California licenses security guards and regulates their conduct does not transform them into state agents. (*United States* v. *Lima, supra*, 424 A.2d at pp. 120-121.) Security guards are required to take a course in exercise of power to arrest. (Bus. & Prof. Code, §§ 7545.1, 7545.2.) The state emphasizes, in its pamphlet Powers to Arrest[,] Security Guard Training (1987 Rev.) Department of Consumer Affairs, Bureau of Collection and Investigative Services, page 8, "A security guard is *not* a police officer. Guards do not have the same job duties as police officers; they do not have the same training; and they do not have the same powers according to law." A security guard arrests with the same power as any other citizen. (*Id.* at p. 14.)

Substantial evidence in the record supports the finding of the trial court.

### DISPOSITION

The judgment is affirmed.

Capaccioli, Acting P. J., and Elia, J., concurred.

A petition for a rehearing was denied August 15, 1990, and appellant's petition for review by the Supreme Court was denied October 11, 1990.