[No. B048484. Second Dist., Div. One. Feb. 28, 1991.]

In re CHRISTOPHER H. et al., Persons Coming Under the Juvenile Court Law.
THE PEOPLE, Petitioner and Appellant, v.
CHRISTOPHER H. et al., Respondents.

1568

**COUNSEL**

Ira Reiner, District Attorney, Donald J. Kaplan and Maurice J. Oppenheim, Deputy District Attorneys, for Petitioner and Appellant.

Susanne C. Wylie, under appointment by the Court of Appeal, Wilbur F. Littlefield, Public Defender, Laurence M. Sarnoff, Ann Gillam and Albert J. Menaster, Deputy Public Defenders, for Respondents.

## OPINION

## SPENCER, P. J.—

### INTRODUCTION

The People appeal from orders suppressing evidence and dismissing petitions under Welfare and Institutions Code section 602 against respondents Christopher H. and Troy M. Each petition alleged the minor was guilty of carrying a concealed firearm without a license (Pen. Code, § 12025, subd. (b)), possessing a concealable firearm without written permission from, and without being accompanied by, a parent or guardian (Pen. Code, § 12101, subd. (a)) and possessing live ammunition without written permission of a parent or guardian (Pen. Code, § 12101, subd. (b)). The petition against Troy H. also alleged he falsely identified himself to a police officer (Pen. Code, § 148.9, subd. (a)).

### STATEMENT OF FACTS

On November 15, 1989, at about 2:10 p.m., James Bizzell (Bizzell) and James Adrian (Adrian), security officers employed by the Los Cerritos Mall, observed Christopher and Troy walking along an access road at the northern edge of the mall; the road is part of the mall's parking lot. The minors stopped, looked around, then walked into the bushes along the fence line, disappearing from the officers' sight. Although it was not unusual for people to walk along the road, the officers decided to get the minors out of the bushes and find out what they were doing there.

The minors readily came out of the bushes, and the officers separated them in order to question them. Bizzell was talking to Christopher, and he noticed Christopher had a large bulge around his stomach area. He asked Christopher to lift his sweatshirt, and when the minor did so he saw the grips of a large handgun. He removed a loaded .357 magnum handgun from Christopher's waistband, then yelled to Adrian that the minor was carrying a firearm.

Adrian, who was talking to Troy, could not hear what Bizzell was yelling due to traffic noise. However, Troy said, "I have one, too" and lifted his sweater to reveal a gun. Adrian took a .25-caliber handgun and a box of ammunition from him. The officers then called the sheriff's department.

### CONTENTION

■ The People contend the trial court erred in suppressing evidence under *People* v. *Zelinski* (1979) 24 Cal.3d 357 [155 Cal.Rptr. 575, 594 P.2d

1000], in that the case has been superseded by the adoption of article I, section 28, subdivision (d), of the California Constitution, and it is no longer required that evidence seized by privately employed security personnel, who are acting on their own initiative and are not instruments or agents of the state, be excluded. For the reasons set forth below, we agree.

## DISCUSSION

In *People* v. *Zelinski, supra,* 24 Cal.3d 357, store detectives arrested defendant for shoplifting, searched her purse for stolen merchandise and discovered a vial of heroin; she was then taken into police custody and charged with unlawful possession of heroin. (At p. 361.) The court concluded the search of her purse was illegal; the question then was whether the fruit of that search—the vial of heroin—must be excluded. (*Id.* at p. 364.)

The court noted California cases have generally interpreted the right to be free from unreasonable searches and seizures embodied in the California Constitution, article I, section 13, to apply to governmental searches and seizures. (*People* v. *Zelinski, supra,* 24 Cal.3d at p. 365.) The exclusionary rule, which applies in such circumstances, also has been applied to exclude evidence obtained illegally by private citizens only where it served the purpose of restraining abuses by the police of their statutory powers. (*Ibid.*) Thus, the fruit of illegal searches and seizures by private security personnel has been excluded only where the private security personnel acted in concert with the police or the police stood silently by. (*Id.* at pp. 365-366.)

However, the court was mindful of the increased reliance by local law enforcement authorities on private security personnel and the growth of the private security industry, noting that, realistically, private security personnel pose a comparable threat to the rights of citizens as do the police. (*People* v. *Zelinski, supra,* 24 Cal.3d at p. 366.) Application of the exclusionary rule to illegal searches and seizures by private security personnel who regularly perform quasi-law-enforcement activities would have a deterrent effect on such conduct. (*Ibid.*) Thus, the court concluded, when private security personnel are fulfilling a public function, i.e., engaging in a statutorily authorized citizen's arrest and detention of a person in aid of law enforcement authorities, and they conduct an illegal search or seizure, the constitutional proscriptions of article I, section 13, and hence the exclusionary rule, apply. (*Id.* at pp. 366-367, 368.) Since the store detectives arrested defendant and conducted a search incident to that arrest, rather than simply demanding the return of store merchandise, they went beyond the store's private interests to further state interests. (*Id.* at p. 367.) They were accordingly bound by the provisions of article I, section 13, and their illegal search

and seizure required the exclusion of the heroin obtained as a result. (*Id.* at pp. 367-368.)

Since the decision in *Zelinski*, section 28, subdivision (d), has been added to article I of the California Constitution by the enactment of Proposition 8. That section provides in pertinent part: "Except as provided by statute . . . , relevant evidence shall not be excluded in any criminal proceeding . . . ." *In re Lance W.* (1985) 37 Cal.3d 873 [210 Cal.Rptr. 631, 694 P.2d 744] addressed the question whether article I, section 13 survived Proposition 8 as a basis for the exclusion of evidence. The court concluded Proposition 8 abrogated a defendant's right to object to and suppress evidence seized in violation of article I, section 13 but not in violation of the Fourth Amendment to the United States Constitution. (37 Cal.3d at p. 879.)

The court in *In re Lance W.* noted that the Fourth Amendment and article I, section 13 extend similar protection against unreasonable searches and seizures. (37 Cal.3d at p. 881.) The federal exclusionary rule has been described by the United States Supreme Court as " ' "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the person aggrieved." ' " (*Ibid.*) The circumstances under which it must be applied in order to deter future unlawful conduct by police or other state agents are defined by the United States Supreme Court. (*Id.* at p. 882.) That court has pointed out, " 'Despite its broad deterrent purpose, the exclusionary rule has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons. As with any remedial device, the application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served.' " (*Ibid.*)

The California Supreme Court also adopted the exclusionary rule as a remedy to secure compliance by police with constitutional provisions. (*In re Lance W., supra*, 37 Cal.3d at p. 883.) The rule was adopted as a rule of evidence, and one which had a broader application than the federal exclusionary rule, applying to evidence seized in violation of either the Fourth Amendment or article I, section 13. (*Id.* at pp. 883-884.)

Turning to the effect of Proposition 8 and the adoption of article I, section 28, subdivision (d), the court noted that article I, section 13 was not repealed; a search or seizure previously unlawful under that section remains unlawful. (*In re Lance W., supra*, 37 Cal.3d at p. 886.) However, Proposition 8 "eliminate[d] a judicially created *remedy* for violations of the search and seizure provisions of the federal or state Constitutions, through the exclusion of evidence so obtained, except to the extent that exclusion remains federally compelled." (*Id.* at pp. 886-887, italics in the original.)

While the exclusionary rule had long been considered the only effective means of deterring violations by police of the search and seizure provisions of the federal and state Constitutions, the court acknowledged "[t]he fact remains, however, that [the rule is] of judicial creation, and relate[s] to remedy rather than the scope of substantive rights protected by either Constitution. The people have apparently decided that the exclusion of evidence is not an acceptable means of implementing those rights, except as required by the Constitution of the United States." (*Id.* at p. 887.)

*People* v. *Zelinski, supra*, 24 Cal.3d 357, decided that when private security personnel conduct a search and seizure while fulfilling a public function, i.e., engaging in a statutorily authorized citizen's arrest and detention of a person in aid of law enforcement authorities, the constitutional proscriptions of article I, section 13 apply. (At pp. 366-367.) If the search and seizure is unconstitutional, the exclusionary rule applies. (*Id.* at p. 368.) Thus, pursuant to *In re Lance W., supra*, 37 Cal.3d 873, application of the exclusionary rule in these circumstances is a judicial remedy based on state constitutional provisions which has been abrogated by the enactment of Proposition 8 and addition of section 28, subdivision (d), to article I except to the extent exclusion may be mandated by the federal constitution. (At pp. 879, 886-887; accord, *People* v. *Brouillette* (1989) 210 Cal.App.3d 842, 846 [258 Cal.Rptr. 635], review den. July 20, 1989.)

The United States Supreme Court has held that the Fourth Amendment proscriptions apply only to acts of government officers or their agents. (*Skinner* v. *Railway Labor Executives' Ass'n.* (1989) 489 U.S. 602 614 [103 L.Ed.2d 639, 657, 109 S.Ct. 1402].) "The Fourth Amendment gives protection against unlawful searches and seizures, and . . . its protection applies to governmental action. Its origin and history clearly show that it was intended as a restraint upon the activities of sovereign authority, and was not intended to be a limitation upon other than governmental agencies; as against such authority it was the purpose of the Fourth Amendment to secure the citizen in the right of unmolested occupation of his dwelling and the possession of his property, subject to the right of seizure by process duly issued." (*Burdeau* v. *McDowell* (1921) 256 U.S. 465, 475 [65 L.Ed. 1048, 1051, 41 S.Ct. 574, 13 A.L.R. 1159].)

The United States Supreme Court has never expressed an opinion on the status of private security personnel. (*Collins* v. *Womancare* (9th Cir. 1989) 878 F.2d 1145, 1150, cert. den. (1990) __ U.S. __ [107 L.Ed.2d 949, 110 S.Ct. 865].) One federal court has expressed such an opinion. In *United States* v. *Francoeur* (5th Cir. 1977) 547 F.2d 891, certiorari denied 431 U.S. 918, 923, 932 [53 L.Ed.2d 228, 238, 249, 97 S.Ct. 2182, 2197, 2640], defendants were searched by Disney World security personnel who suspected

them of having passed counterfeit $50 bills. (547 F.2d pp. 892-893.) The court declined to require the evidence seized as a result of the searches to be excluded, even assuming the searches would have been illegal if carried out by governmental officials; the court concluded the private security personnel were simply not governmental officials. (*Id*. at pp. 893-894.)

*Collins* v. *Womancare, supra*, 878 F.2d 1145, addressed the question when actions by private citizens constitute state action for the purposes of a lawsuit brought under 42 United States Code section 1983. The court noted the Fourteenth Amendment—which plaintiffs claimed defendants violated—applies only to state action, not private conduct, however wrongful. (878 F.2d at p. 1147.) Inasmuch as the Fourth Amendment has been made applicable to the states through the Fourteenth Amendment, it is only state action which may constitute a violation of the Fourth Amendment.[1]

In *Collins*, the claimed state action was citizen's arrests by defendants. The court noted the United States Supreme Court has never decided whether citizen's arrests qualify as state action, although lower federal courts have consistently held they do not. (878 F.2d at pp. 1149-1150.) In order to determine whether the citizen's arrests in the case constituted state action, the court used the two-part test set forth in *Lugar* v. *Edmondson Oil Co., supra*, 457 U.S. at page 937 [73 L.Ed.2d at pp. 495-496]: (1) whether the deprivation of constitutional rights was caused by the exercise of some right or privilege created by the state, or by a rule of conduct imposed by the state, or by a person for whom the state is responsible; and (2) whether the person charged with the deprivation may fairly be said to be a state actor because he or she is a state official, acted with or obtained significant aid from state officials, or engaged in conduct which is otherwise chargeable to the state. (878 F.2d at p. 1151.)

Plaintiffs relied on *People* v. *Zelinski, supra*, 24 Cal.3d 357, for the proposition a citizen's arrest constitutes state action. The court examined *Zelinski* but found it inapplicable for two reasons. First, it noted that although state precedent may be persuasive on the issue of what constitutes state action, resolution of the issue is ultimately to be based on federal, not state, law. (878 F.2d at p. 1154.) Second, the court concluded "insofar as *Zelinski* held that action by a private party pursuant to but in violation of a state statute

---

[1] As respondents note, action under color of state law within the meaning of section 1983 may differ from state action within the meaning of the Fourteenth Amendment. (*Collins* v. *Womancare, supra*, 878 F.2d at p. 1148; see *Lugar* v. *Edmondson Oil Co.* (1982) 457 U.S. 922, 935, fn. 18 [73 L.Ed.2d 482, 494-495, 102 S.Ct. 2744].) However, inasmuch as the plaintiffs in *Collins* were required to establish state action in order to show a Fourteenth Amendment violation, the court applied principles applicable to both state action and action under color of state law. (*Collins, supra*, at p. 1148.) Hence, the principles applied in that case are equally applicable here.

*can* constitute state action, *Zelinski* directly conflicts with and is superseded by *Lugar*." (*Ibid.*, italics in the original.) The court also concluded *Zelinski* was abrogated by Proposition 8 to the extent it expanded the concept of state action under the California Constitution beyond federal law. (*Ibid.*)

Under part two of the *Lugar* test, there clearly was no state action here. The private security officers who stopped and searched defendants were not state officials, they obtained no aid from state officials in stopping and searching defendants, and their conduct is not otherwise chargeable to the state, in that the state had no part in it until after the stop and search had been completed. (*Lugar* v. *Edmondson Oil Co., supra*, 457 U.S. at p. 937 [73 L.Ed.2d at pp. 495-496]; *Collins* v. *Womancare, supra*, 878 F.2d at p. 1151; see also *San Fran. Arts & Athletics* v. *U. S. O. C.* (1987) 483 U.S. 522, 544-546 [97 L.Ed.2d 427, 453-454, 107 S.Ct. 2971].)

A similar result was reached in *People* v. *Taylor* (1990) 222 Cal.App.3d 612 [271 Cal.Rptr. 785]. In *Taylor*, security guards employed by the owner of the Santa Cruz Beach Boardwalk encountered defendant and others on a path under the boardwalk leading from a parking lot to the beach; they had open containers of beer, one was smoking a marijuana cigarette and defendant had a baggie containing a green substance on his lap. One of the guards asked defendant for the baggie and his identification; defendant gave him the baggie but said he had no identification. He then asked defendant if he could search him; defendant began to tremble and shake and denied he had drugs on him but consented to a search. The guard found four more baggies containing marijuana and paper impregnated with LSD. He returned these items to defendant, handcuffed him and transported him to a security office. The police were called and told that defendant was being detained on narcotics charges and it was believed he possessed narcotics; they searched him and found the drugs. (At pp. 616-617.)

Defendant contended, inter alia, the evidence should have been suppressed on the ground it was illegally seized, in that the security guards were not acting in a purely private capacity, since they were carrying out a police function, and they were acting jointly with the police. Additionally, the guards' conduct must be imputed to the state inasmuch as they were subject to the state's licensing and regulatory scheme. (*People* v. *Taylor, supra*, 222 Cal.App.3d at pp. 617-618.)

Defendant relied on *Zelinski* in support of his contention. The court noted *Zelinski* was decided prior to the enactment of Proposition 8, and the exclusionary rule now applies only if the search may be characterized as state action. (*People* v. *Taylor, supra*, 222 Cal.App.3d at p. 621.) The court then cited *Collins*'s holding *Zelinski* has been abrogated by Proposition 8

and superseded by the United States Supreme Court's decision in *Lugar*. (*Ibid.*)

The *Taylor* court applied *Lugar*'s two-part test. The first question was whether the deprivation of defendant's right to be free from unreasonable searches and seizures was caused by the exercise of some right or privilege created by the state and traditionally exclusive to the state. (*People* v. *Taylor, supra*, 222 Cal.App.3d at p. 622; see *Collins* v. *Womancare, supra*, 878 F.2d at pp. 1149-1150.) The court concluded it did not; federal courts have held arrest has never been exclusively a government function, but citizens have been empowered to perform arrests of persons committing crimes in their presence. (*Taylor, supra*, at pp. 622-623.) Thus, defendant did not meet the first prong of the *Lugar* test. (*Id.* at p. 623.)

As to the second prong of the test, defendant contended the security guards were operating jointly with the police, therefore their action should be imputed to the state. The bases of the claim of joint operation were that the police also used the security office; the security guards had access to police radios, which they could have used to call the police and have them perform the search; the security guards exercised the authority of the state by arresting, handcuffing and searching defendant; the security guards were clothed with the indicia of state authority by virtue of their uniforms and equipment; and the security guards did not act for a purely private purpose. (*People* v. *Taylor, supra*, 222 Cal.App.3d at pp. 623-624.)

The court, citing *Collins*, noted that for there to be joint action the state must have "so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity . . . . [Citation.] Joint action therefore requires a substantial degree of cooperative action." (*People* v. *Taylor, supra*, 222 Cal.App.3d at p. 624, internal quotation marks omitted.) By this definition, there was no state action: the security guards provided the sole impetus for defendant's arrest, there was no plan or arrangement between the owner of the boardwalk and the police giving police authority to the security guards, and the police did not encourage or force the security guards to effect a citizen's arrest of defendant. (*Id.* at p. 625.) Additionally, the guards' uniforms identified them as "security," not "police," and they did not represent themselves to be police officers. (*Ibid.*) And while they were licensed and regulated by the state, the state distinguishes between the two and emphasizes that security guards are not police officers. (*Ibid.*)

The court also pointed out federal cases, which it followed for purposes of determining what constitutes state action under the Fourth Amendment (*People* v. *Taylor, supra*, 222 Cal.App.3d at p. 623), "disagree with

*Zelinski*'s assertion 'that store detectives *when they make an arrest* do not act in a purely private capacity but "assert the power of the state." ' [Citation.]" (*Id.* at p. 625.) Under *Lugar*, there simply was no state action. (*Ibid.*) Accordingly, the court concluded defendant's suppression motion properly was denied. (*Id.* at p. 626.)

Respondents nonetheless claim there was state action, in that, contrary to statements in *Collins* and *Taylor,* state law determines who is a state agent and in this case state law, *Zelinski*, says that private security personnel are state agents. However, the United States Supreme Court has repeatedly held that, "for purposes of determining the proper applicability of federal constitutional protections, . . . federal law rather than state law" is determinative (*Hicks* v. *Feiock* (1988) 485 U.S. 624, 630 [99 L.Ed.2d 721, 730, 108 S.Ct. 1423]). Our own Supreme Court echoed this holding in *In re Lance W., supra,* 37 Cal.3d at page 882.

Thus, in *California* v. *Greenwood* (1988) 486 U.S. 35, 43-44 [100 L.Ed.2d 30, 38-39, 108 S.Ct. 1625], the court reiterated that the reasonableness of a search under the Fourth Amendment depends upon federal law, not state law; concepts of privacy under state law do not determine the reach of the Fourth Amendment. In *Keller* v. *State Bar of California* (1990) 495 U.S. __, __ [110 L.Ed.2d 1, 11-12, 110 S.Ct. 2228, 2234], the court noted that while the California Supreme Court was the final authority on whether the State Bar was a government agency for purposes of state law, its determination was not binding on the United States Supreme Court when the determination was essential to the decision of a federal question. Clearly, even if the California Supreme Court could fairly be said to have held in *Zelinski* that private security personnel performing certain functions are state agents under state law, this holding is not binding on a determination whether they are state agents for purposes of application of the Fourth Amendment.

Respondents cite a number of cases in support of their claim. In all of these cases, either state law was applied in a federal case or violation of state law was held to be a violation of federal law. However, all the cases applied to specific situations and none can be interpreted to hold state law determines when there has been state action for purposes of the Fourth or Fourteenth Amendments. And in view of clear United States Supreme Court holdings that it is federal law which determines the applicability of federal constitutional protections (e.g., *California* v. *Greenwood, supra,* 486 U.S. at pp. 43-44 [100 L.Ed.2d at pp. 38-39]; *Hicks* v. *Feiock, supra,* 485 U.S. at p. 630 [99 L.Ed.2d at p. 730]), we find these cases to be inapposite and conclude federal law determines whether there has been state action for purposes of applying the Fourth Amendment and, under federal law, there was no state action and the Fourth Amendment does not apply. Therefore,

the trial court erred in granting defendants' suppression motions on the basis of the holding in *Zelinski*.

The orders are reversed.

Ortega, J., and Vogel, J., concurred.

Respondents' petition for review by the Supreme Court was denied May 22, 1991.