IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 29961-9-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| JOEL CHAVEZ, | ) | |
| | ) | |
| Appellant. | ) | |

KORSMO, C.J. — Joel Chavez challenges his conviction for unlawful possession of a controlled substance, arguing the trial court erred by allowing evidence that nightclub personnel found cocaine on Mr. Chavez's person. We agree with the trial court that the security personnel were not acting as government agents and affirm the conviction.

BACKGROUND

Club Paradise was a drinking establishment in Richland, Washington. In 2006, Paradise was the leading liquor establishment for calls for police service, causing a drain on the Richland Police Department's (RPD) resources.

In April 2007, Captain Al Wehner of the RPD approached the owners of Paradise in an effort to address the problem. The RPD and Paradise decided that the club would

reimburse off-duty officers to be on-site at the club's parking lot on nights when the club was hosting larger events such as concerts.[1] Between May 2007 and January 2009, Captain Wehner and Ana Cuevas, one of the club's owners, exchanged numerous e-mails relating to this agreement in which they determined which nights the club needed off-duty officers and how much Paradise owed RPD for reimbursement.

During a meeting on June 22, 2007, the owners of Paradise asked Captain Wehner for advice as to what should be done with narcotics found on a patron during a weapons frisk. Captain Wehner recommended that club personnel should not seize any narcotics because that would put the club staff in possession of the narcotics. He advised the owners to tell security personnel to refuse admittance to any patron found with narcotics. On June 28, the RPD conducted an hour-long training session for the Paradise security personnel on "verbal judo" techniques, which focus on using verbal communication to "de-escalate" situations.

On March 14, 2009, Joel Chavez entered Paradise and submitted to a search by the security personnel. Charles Reum and Christopher Boyd were the security personnel on duty that night. No testimony was elicited from Mr. Boyd regarding any classes or

---

[1] Typically, RPD supplied three police officers and one police supervisor who provided a police presence in the club's parking lot.

2

involvement he had with the RPD, but Mr. Reum testified that his only involvement with the RPD was taking the verbal judo class.

Mr. Reum observed another member of the security team, "Paul," perform a quick "pat down" of Mr. Chavez, during which Paul felt a bulge in Mr. Chavez's pocket. The security team told Mr. Chavez to remove the item, but he refused and attempted to leave the club. However, Mr. Chavez was grabbed by security and taken to the ground. Security removed the item from Mr. Chavez's pants against his will. The item was a small bindle of a white powdery substance. Mr. Chavez was handcuffed while security called the RPD.

Officer Jeff Bickford of the RPD arrived shortly thereafter and observed Mr. Chavez handcuffed and lying on the floor. Mr. Boyd gave the suspected controlled substance to Officer Bickford, which tested positive for cocaine. Mr. Chavez was taken into custody and arrested for possession of a controlled substance. The RPD did not arrest any Club Paradise security personnel for their possession of a controlled substance.

Mr. Chavez filed a motion to suppress the cocaine, claiming that it was the product of an unlawful search and seizure by the security personnel who were acting as agents of the RPD. The trial court denied the motion, holding that Mr. Chavez did not establish that the security personnel were acting as state agents.

Mr. Chavez was convicted of unlawful possession of a controlled substance at a stipulated facts trial. He then timely appealed to this court.

## ANALYSIS

Mr. Chavez contends that the security personnel were acting as agents of the RPD when they seized the cocaine, the seizure was not justified under the private search doctrine, and the State should not be allowed to benefit from the illegal conduct. Each argument is addressed in turn.

The Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution both protect an individual's right to privacy from governmental trespass. *See, e.g., State v. Rankin*, 151 Wn.2d 689, 694-95, 92 P.3d 202 (2004). The Washington Constitution affords greater protection than the Fourth Amendment by requiring a warrant before any search, whereas the Fourth Amendment only protects against unreasonable searches by the State. *Id.* The Fourth Amendment and article I, section 7 apply only to searches by state actors, not those by private individuals. *Burdeau v. McDowell*, 256 U.S. 465, 475, 41 S. Ct. 574, 65 L. Ed. 1048 (1921); *State v. Carter*, 151 Wn.2d 118, 124, 85 P.3d 887 (2004). However, the protections afforded by the Fourth Amendment and article I, section 7 do apply to searches by private individuals who are acting as government agents. *State v. Clark*, 48 Wn. App. 850, 855, 743 P.2d 822 (1987).

4

Mr. Chavez initially contends that the security personnel were acting as state agents when they searched him and found the cocaine. He points to the fact that Paradise sought out both training and advice from the RPD and claims the RPD's action of providing off-duty officers as security detail rises to a level of involvement that creates state action. However, the record does not demonstrate a level of involvement that rises to state agency, especially since the security personnel's actions went directly against the advice of the RPD.

A private individual acts as an agent of the state if the actions of the private citizen were "instigated, encouraged, counseled, directed, or controlled" by the state or its officers. *State v. Agee*, 15 Wn. App. 709, 713-14, 552 P.2d 1084 (1976), *aff'd*, 89 Wn.2d 416, 573 P.2d 355 (1977). Key considerations when determining whether state agency exists include "whether the government knew of and acquiesced in the intrusive conduct" and whether the private party "intended to assist law enforcement efforts or to further his own ends." *Clark*, 48 Wn. App. at 856. A close working relationship between the police and a private citizen may be "tantamount to joint action," and make the private citizen an agent of the state. *State v. Birdwell*, 6 Wn. App. 284, 288, 492 P.2d 249 (1972). But the fact that there are contacts between the police and a private citizen does not make that private citizen an agent. *State v. Walter*, 66 Wn. App. 862, 866, 833 P.2d 440 (1992).

5

Appellate courts review a suppression ruling to determine whether substantial evidence supports the challenged findings of fact, and whether the findings of fact support the conclusions of law, which are reviewed de novo. *State v. Armenta*, 134 Wn.2d 1, 9, 948 P.2d 1280 (1997). The defendant bears the burden of showing that a private citizen who provides evidence to the government was acting as an agent of the government. *Clark*, 48 Wn. App. at 856.

The trial court correctly concluded that the security personnel were not acting as state agents when they searched Mr. Chavez and seized the cocaine. Mr. Chavez failed to show that the security personnel's actions were "instigated, encouraged, counseled, directed, or controlled" by the state or its officers. Although Captain Wehner and Ms. Cuevas regularly exchanged e-mails, these e-mails were limited to discussions about which nights the police should supply off-duty police to work the parking lot and the club's reimbursement for these services. The off-duty officers only worked in the parking lot of the club and were never actually part of Paradise's security team. The RPD provided only one hour-long training session for the security personnel which was limited to verbal judo techniques only. These facts do not establish a "joint agency" between the RPD and Paradise.

Furthermore, Mr. Chavez's contention that there was a police influence on the policies of Paradise fails because the security guards' actions went specifically against

6

the advice given by the RPD. Captain Wehner told the club owners that security should simply refuse entrance to any patron found with narcotics during a weapons pat down and should not seize any narcotics found on patrons. However, the security personnel refused to let Mr. Chavez leave the club but instead detained him, searched him against his will, and seized the cocaine they found, all in direct opposition to the RPD's advice. The security personnel's actions were not "instigated, encouraged, counseled, directed, or controlled" by the RPD and the trial court correctly determined that Mr. Chavez failed to establish that the security personnel were state agents.[2]

Mr. Chavez also contends that the security personnel broke the law when they searched and detained him against his will, and that the State should not be allowed to benefit from the illegal actions of private citizens. In support of this argument, Mr. Chavez cites to the California Supreme Court case of *People v. Zelinski*, 24 Cal. 3d 357, 366-67, 594 P.2d 1000, 155 Cal. Rptr. 575 (1979), which held that when private security personnel conduct an illegal search or seizure while engaged in a statutorily authorized

---

[2] Mr. Chavez also argues that the State's failure to prosecute the security personnel for unlawful detainment, assault, and possession of a controlled substance tends to prove that the security personnel were acting as agents of the state. However, a prosecuting attorney is vested with great discretion in determining when to file criminal charges, and may consider a wide range of factors when deciding whether to prosecute. *See, e.g.,* *State v. Lewis*, 115 Wn.2d 294, 299, 797 P.2d 1141 (1990); *State v. Rowe*, 93 Wn.2d 277, 287, 609 P.2d 1348 (1980). Given the broad discretion granted to prosecuting attorneys, the prosecutor's failure to file charges against the security personnel does not tend to prove they were acting as state agents.

7

citizen's arrest in aid of law enforcement authorities, the exclusionary rule applied under the California State Constitution.[3]

Mr. Chavez's reliance on *Zelinski* is misplaced because Washington has never recognized such a rule. In Washington, "there is no prohibition against the State's use of evidence or information obtained by a private citizen, even though by unlawful means, unless the actions of the private citizen were in some way 'instigated, encouraged, counseled, directed, or controlled' by the State or its officers." *Agee*, 15 Wn. App. at 713-14. Although the club personnel may have illegally detained and searched Mr. Chavez, his remedy for those acts lies with the civil justice system.

Mr. Chavez's final argument is that the illegal search and seizure by the security personnel is not protected under article I, section 7 because the Washington Supreme Court determined that the private search doctrine is inapplicable to warrantless searches in *State v. Eisfeldt*, 163 Wn.2d 628, 185 P.3d 580 (2008). The problem with this argument is that it assumes there was a warrantless search by the State. There was not.

---

[3] Following the *Zelinski* decision, the California Constitution was amended and California courts have determined that this constitutional amendment abrogated *Zelinski* to the extent that it expanded the concept of state action under the California Constitution beyond federal law. *See, e.g., In re Christopher H.*, 227 Cal. App. 3d 1567, 1571-72, 278 Cal. Rptr. 577 (1991); *People v. Taylor*, 222 Cal. App. 3d 612, 621, 721 Cal. Rptr. 785 (1990). However, at the time *Zelinski* was decided, article I, section 13 of the California Constitution provided that, "The right of the people to be secure in their persons, houses, papers and effects against unreasonable seizures and searches may not be violated," a provision that is similar to article I, section 7 of the Washington Constitution.

8

Under the private search doctrine, a warrantless search by a state actor does not offend the Fourth Amendment if the search does not expand the scope of the private search. *Walter v. United States*, 447 U.S. 649, 100 S. Ct. 2395, 65 L. Ed. 2d 410 (1980). The rationale underlying this doctrine is that an individual's reasonable expectation of privacy is destroyed by the private actor's search. *United States v. Jacobsen*, 466 U.S. 109, 119, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984). Washington does not recognize the private search doctrine as an exception to the exclusionary rule. *Eisfeldt*, 163 Wn.2d at 637-38.

Although Mr. Chavez is correct in his assertion that the private search doctrine is contrary to the Washington Constitution, that rule has no bearing on the case at hand because here there was no warrantless search by the State. The Paradise personnel detained and searched Mr. Chavez, finding cocaine in his pocket. They seized the cocaine and gave it to the police when they arrived at the club. Unlike *Eisfeldt*, where a repairman let the police into the house, showed them a suspected grow operation, and the police subsequently searched the house, the RPD did not conduct any search of its own. Since no State search occurred, *Eisfeldt* is inapplicable because the cocaine evidence was not admitted pursuant to the private search doctrine. The trial court did not err in denying the motion to suppress.

Affirmed.

9

No. 29961-9-III
State v. Chavez

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, C.J.

WE CONCUR:

_____
Kulik, J.

_____
Siddoway, J.